**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0042n.06**

**No. 08-5846**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 25, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE WESTERN |
| | ) DISTRICT OF TENNESSEE |
| JUAN MENDEZ, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

BEFORE: NORRIS, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Juan Mendez appeals his sentence of 600 months in prison for sex trafficking

through force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and 1591 (b)(1), and 18

U.S.C. § 2, arguing that the sentence imposed by the district court was substantively unreasonable

and excessive. Because the mitigating factors Mendez asserts on appeal do not undermine the

substantive reasonableness of his sentence, we affirm.

I.

Mendez operated a brothel in Tennessee, which he filled with young women his girlfriend

and codefendant Cristina Perfecto brought back from Mexico under false pretenses. In 2005,

Mendez directed Perfecto to bring "young girls" from Mexico to engage in prostitution in the United

States. According to one of the victims, S.C.M., Perfecto offered her a job in a restaurant in the

United States and assured her parents that Perfecto would care for her. S.C.M's parents ultimately allowed Perfecto to take S.C.M. to the United States, and Mendez paid for Perfecto and S.C.M.'s trip, including the fee for the smuggler who helped them cross the border. After arriving in Nashville, Tennessee, Perfecto informed S.C.M. that the restaurant job was a pretense and that S.C.M. was expected to engage in prostitution. S.C.M. refused and was subsequently raped and abused by Mendez.[1] Mendez and Perfecto took S.C.M. to multiple brothels – in Memphis, Nashville, Knoxville, as well as in Kentucky and Alabama – and forced her to engage in prostitution a week at a time in each place. During the nine months Mendez held S.C.M., he forced her to have sex with hundreds, if not thousands, of men.[2] Mendez or Perfecto always kept S.C.M.'s share of the earnings. Defendant threatened to hurt S.C.M. and her family if she ever escaped or disobeyed him.

In 2006, Perfecto convinced S.C.M.'s cousin, E.F.R., who was 19 years old, to come to the United States under the pretense of working in a restaurant. As with S.C.M., when E.F.R. arrived in Nashville in March 2006, she was told there was no restaurant job and that she had been brought to the United States to engage in prostitution. Mendez raped E.F.R. and forced her to engage in prostitution against her will by making her "feel threatened." Mendez and Perfecto took all her earnings and controlled all aspects of her life.

On November 16, 2006, a federal grand jury returned a sixteen-count superseding indictment against Mendez and eleven other defendants. Count 1 charged that Mendez violated 18 U.S.C. §§

---

[1]S.C.M. was 13 years old at that time.

[2]On at least one occasion, S.C.M. was forced to have sex with 50 men in one day.

1591(a) and 1591(b)(1), and 18 U.S.C. § 2 by sex trafficking a minor, S.C.M., through force, fraud, or coercion. Count 2 alleged that Mendez violated 18 U.S.C. § 1591(a) and 18 U.S.C. § 2 by sex trafficking E.F.R. through force, fraud, or coercion. Count 9 charged that Mendez and five codefendants violated 8 U.S.C. § 1324(a)(1)(A)(v)(I) by concealing, harboring, or shielding an illegal alien from detection. Mendez entered into a plea agreement in which he pled guilty to Counts 1 and 2 in exchange for dismissal of the remaining charge in Count 9.

On June 27, 2008, the district court conducted Mendez's sentencing hearing, where Mendez and victims S.C.M. and E.F.R. testified. Mendez admitted that he lured S.C.M. and E.F.R. to the United States under false pretenses, abused and raped them, kept them captive, forced them to engage in prostitution, and took all of their earnings. The district court determined that Mendez's offense level was 46, which was adjusted downward to the maximum offense level of 43, resulting in an advisory Guidelines sentence of life imprisonment. Although the government argued that the district court should sentence Mendez to life in prison, the district court gave Mendez a downward variance, and sentenced him to 600 months in prison on each count, to be served concurrently. In addition, Mendez was sentenced to 10 years of supervised release, to be served concurrently, and ordered to pay $60,000 in restitution to S.C.M., $40,000 in restitution to E.F.R., and a $200 special assessment. The district court further ordered that Mendez be referred to immigration authorities for deportation proceedings upon his release.

II.

We review sentences for reasonableness under an abuse-of-discretion standard. *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 748 (6th Cir. 2005) (internal citations and quotations omitted). When evaluating the reasonableness of a sentence, we consider "not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007) (internal citations and quotations omitted). Our reasonableness inquiry is therefore comprised of both substantive and procedural components. *Id.* "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (internal citations and quotations omitted). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (internal quotation marks and citation omitted). While the procedural and substantive components of the court's analysis "appear to overlap," *Jones*, 489 F.3d at 252 n.3, the substantive inquiry turns on whether "the length of the

sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008).

We apply a rebuttable presumption of reasonableness to sentences that fall within a properly calculated Guideline range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). Where the district court imposes a sentence below the Guidelines range, "simple logic compels the conclusion that . . . defendant's task of persuading [this court] that the more lenient sentence . . . is unreasonably long is even more demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Mendez makes no arguments that his sentence is procedurally unreasonable. He does not contend that the Guidelines range calculated and applied to his sentence is incorrect, and there is no evidence in the record to that effect. The record shows that the district court: (1) properly calculated and considered the applicable Guidelines range, which was life imprisonment; (2) considered the relevant factors listed in § 3553(a); and (3) considered Mendez's arguments for a lenient sentence and granted him a downward variance from life imprisonment to 600 months. Because the Guidelines range was correctly calculated and the district judge sentenced Mendez below that range, we need only review the sentence for substantive reasonableness under an abuse-of-discretion standard and will accord a rebuttable presumption of reasonableness to Mendez's sentence. *See Gall*, 552 U.S. at 51 ("Assuming that the district court's sentencing decision is procedurally sound, [we] should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.").

III.

Mendez argues that his sentence is greater than necessary to achieve the goals set forth in §

3553 because the district court failed to properly consider his: (1) drug and alcohol abuse; (2)

deportation pending release; (3) assistance to the government with related prosecutions; (4)

disadvantaged background and lack of education, skills, and training; and (5) remorse.

A.

In his request for a downward departure, Mendez asked the district court to consider his

alleged alcohol and drug abuse during the relevant time period.[3] Yet, there was no evidence or

testimony presented to the district court that indicated Mendez had an issue relating to drug or

alcohol abuse when S.C.M. and E.F.R. were under his control. Thus, not surprisingly, the district

court did not specifically refer to Mendez's alleged but unproven drug and alcohol abuse in deciding

his sentence. That, however, does not warrant a finding by this court that Mendez's sentence was

substantively unreasonable or a determination that remand is appropriate. "When a district court

adequately explains *why* it imposed a particular sentence . . . we do not further require that it

exhaustively explain the obverse – *why* an alternative sentence was *not* selected – in every instance."

*United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006); *see also United States v. Fernandez*, 443

---

[3]"[A] district court's decision to deny a downward departure is unreviewable unless the lower court incorrectly believed that it lacked the authority to grant such a departure." *United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008). Mendez has not presented grounds for reviewability based on absence of authority, nor do we find any. Thus, our review is limited to determining, under an abuse of discretion standard, whether the district court erred in failing to grant Mendez a greater variance to accomplish the purposes set forth in § 3553.

F.3d 19, 30 (2d Cir. 2006) ("[W]e will not conclude that a district judge shirked her obligation to

consider the § 3553(a) factors simply because she did not discuss each one individually or did not

expressly parse or address every argument relating to those factors that the defendant advanced.").

"A sentencing judge has no more duty than we appellate judges do to discuss every argument made

by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be

passed over in silence." *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005).

B.

Similarly, Mendez did not argue at his sentencing hearing that his deportation upon release

should be considered a mitigating factor warranting a variance.[4] Indeed, although the district judge

specifically asked defense counsel towards the end of the sentencing hearing whether there were "any

---

[4]In his request for a downward departure, Mendez indicates he has a pending detainer lodged against him for future deportation proceedings. There is circuit split on whether a defendant's status as a deportable alien is a proper basis for a downward departure in sentencing. *Compare United States v. Maung*, 320 F.3d 1305, 1309-10 (11th Cir. 2003); *United States v. Mendoza-Lopez*, 7 F.3d 1483, 1487 (10th Cir. 1993), *impliedly overruled on other grounds by United States v. Fagan*, 162 F.3d 1280 (10th Cir. 1998); *United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993); *United States v. Restrepo*, 999 F.2d 640, 645-47 (2d Cir. 1993) (deportable alien status not a proper basis for departing downward), with *United States v. Farouil*, 124 F.3d 838, 847 (7th Cir. 1997); *United States v. Smith*, 27 F.3d 649, 654-55 (D.C. Cir. 1994) (deportable alien status may be considered for a downward departure). We have addressed the issue solely in the context of a crime that may be committed only by an illegal alien; in such a case, this court held, the Sentencing Commission already took alien status into consideration in determining the Guideline range. *See United States v. Ebolum*, 72 F.3d 35, 38 (6th Cir. 1995). We have not taken a position on whether deportable alien status could be a basis for departure in a crime, such as that committed by Mendez, that is not itself dependent upon alien status. Thus, the district court did not abuse its discretion in failing to grant Mendez a downward departure. *See, e.g., Workman v. Bell*, 484 F.3d 837, 840 (6th Cir. 2007) ("[A] district court's decision to answer an unresolved question of law within the circuit, does not constitute an abuse of discretion.").

other objections or matters [he] failed to address on behalf of the defendant," counsel responded, "[n]o, sir." "Had [defense counsel] raised the issue, specific discussion of the point might have been in order, but it was not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative." *Gall*, 552 U.S. at 54. Here, it is clear that the district court was aware that Mendez was subject to deportation because it specifically recommended that Mendez be referred to Immigration and Customs Enforcement ("ICE") for deportation proceedings following his release from prison. It was not an abuse of discretion for the district court to fail to grant Mendez a variance based on such awareness.[5]

## C.

The district court also did not err in choosing not to grant defendant a downward variance based on his cooperation with the government. *See Petrus*, 588 F.3d at 356 ("A district court may, in its discretion, consider whether a defendant's cooperation should be considered under 18 U.S.C. § 3553(a)."). Contrary to Mendez's assertion, the evidence at the sentencing hearing did not establish that he provided the government substantial assistance in the investigation or prosecution

---

[5]In *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009), we stated that:

[I]n the post-*Booker* era, the Defendant's immigration status could lead a sentencing court to two opposite conclusions, one being that potential deportation and fewer prison opportunities should be a reason for a downward variance. Conversely, the other conclusion could be that a person granted the benefit of entry to the country should be subject to an upward variance for abusing the privilege. In different factual contexts, either approach is within the discretion of the sentencing court.

of persons involved in prostitution activity.[6]  FBI Agent Harris testified that Mendez gave the

government "very basic information" and failed to provide "a lot of details."  Based on information

from the victims and Perfecto, Harris believed that Mendez "was not giving [the government] all the

information that was available to him."  As a result, the government did not request a downward

departure under § 5K1.1 of the Guidelines, and the district court did not vary Mendez's sentence on

this basis.  We do not find that this was an abuse of the district court's discretion.

D.

Here, after calculating the applicable offense level under the Guidelines, the district court

conducted its § 3553(a)[7] inquiry by considering the "nature and circumstances" of Mendez's offenses

and his "history and characteristics."  The district court described Mendez's offenses as "heinous"

---

[6]To the extent that Mendez argues that the district court erred in refusing to grant his request for a downward departure for substantial assistance, we note that we are "without authority to review a decision by the government not to file a 5k1.1 motion, unless a defendant alleges and supports a claim that the refusal to file was based upon an unconstitutional prosecutive motive." *Petrus*, 588 F.3d at 356.  Mendez has not alleged an "unconstitutional prosecutive motive."  Similarly, the district court's refusal to grant Mendez's request for a downward departure for acceptance of responsibility is not reviewable on appeal. *See United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005).  The sole exception is where "the district court was not aware of or did not understand its discretion to make such a departure." *Id*. (citation omitted).  Here, the record reflects that the district court understood it had the discretion to depart downward, but did not believe that a departure for acceptance of responsibility was warranted.  Accordingly, we cannot review the lower court's refusal to depart under the Guidelines.

[7]§ 3553(a) mandates that a district court imposing a sentence consider the defendant's Guideline range; the nature of the offense; the characteristics of the defendant; the need to deter criminal conduct, protect the public, and provide the defendant with needed treatment and appropriate treatment; and the need to avoid sentencing disparities with defendants who have been found guilty of the same conduct and who have similar criminal histories.  18 U.S.C. § 3553(a).

and stated that "the nature and circumstances of the offense" were "the most troubling set of circumstances the court has had the regret of being involved in its short tenure on the bench." It then went on to address Mendez's background and purported remorse, as well as the need to deter criminal conduct, protect the public, and provide Mendez with appropriate treatment.[8]

> The history and characteristics of the defendant. Regretfully, Mr. Mendez states that he came to the United States, similar to these young ladies, in an effort to better himself; but, yet, he chose to go down the path of victimizing and abusing and just basically treating these young ladies as pieces of meat to be passed around in the sordid circumstances involved in this situation.
>
> The court is to consider a sentence to reflect the seriousness of the offense, which, again, I've addressed, to promote respect for the law and to provide just punishment for the offense. The court believes that the sentence in this case that it will impose will reflect those guidelines.
>
> To afford adequate deterrence to criminal conduct; that is, basically, to send a message to others to refrain, to avoid, to prevent this type of activity in the future.
>
> To protect the public from further crimes of the defendant. The court has real concern about Mr. Mendez's – I'm sure he at this point does have some remorse and some feeling that what he did was wrong. Regretfully, it comes many months and years too late in many respects because of the absolute devastating impact it has caused these young ladies and their families to experience and to bear. So the court believes that a sentence in this case should be sufficient to protect the public from further crimes of the defendant, which, again, for many months, many years he was involved in.

---

[8]In denying Mendez credit for acceptance of responsibility, the district court found that Mendez had acted in a manner inconsistent with acceptance of responsibility when he contended that he "did not send [Cristina] Perfecto to Mexico to recruit minors or young women for the prostitution business" and when he claimed that he never threatened "S.C.M.'s parents if she refused to work as a prostitute." Although Mendez "stated in his testimony that he [was] sorry for the actions as far as conduct[,]" the district court noted this was "inconsistent with his statements in [his] objections[.]" The district court found Mendez's objections "frivolous" because he had earlier admitted that he committed both acts.

And finally, provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. He may be in need of some educational or vocational training, which, certainly, he can take advantage of. I'm not aware of any medical care.

Certainly, the court believes that a substantial sentence in this case is important to meet the criteria that I have just reviewed.

The court has also heard from counsel, from defense counsel and from the testimony about Mr. Mendez's background. It's regretful that many individuals who come to the United States across the border, who come in an effort to try to find some type of a better lifestyle, come under very, very poor circumstances. But as I stated earlier, even though, whether they're here legally or illegally, certainly, I would hope the intent of these individuals is not to come and conduct themselves in the manner in which Mr. Mendez has the done over these last several years. But the court does understand the circumstances and has considered that and is considering that in terms of the sentence it's going to impose.

Thus, the district court weighed the § 3553(a) factors, selected a punishment it believed fit Mendez's crimes, and explained the reasons for its sentence. Because Mendez's sentence is below the Guidelines, it is entitled to a rebuttable presumption of substantive reasonableness, and, on abuse of discretion review, we give due deference to the district court's conclusion that the sentence is warranted by the § 3553(a) factors. *United States v. Bolds*, 511 F.3d 568 , 581 (6th Cir. 2007) (citing *Gall*, 552 U.S. at 51). Considering the totality of the circumstances, *id.*, including the Guidelines, the § 3553(a) factors, the nature of the offense, defendant's background, his immigration status, his asserted remorse, and his attempt to cooperate with the government, we find that the 600 month sentence is substantively reasonable.

IV.

For these reasons, we affirm the judgment of the district court.