NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0853n.06

Nos. 08-6193, 09-5745

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | **FILED** |
|  | ) | **Dec 19, 2011** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
|  | ) |  |
| MARCUS ALLEN, | ) |  |
|  | ) |  |
| Defendant-Appellant, | ) |  |
|  | ) |  |
| ARGEO GONZALEZ-PEREZ, | ) |  |
|  |  |  |
| Defendant-Appellant. |  |  |

BEFORE: ROGERS, COOK, and WHITE, Circuit Judges.

ROGERS, Circuit Judge. Marcus Allen and Argeo Gonzalez-Perez appeal their criminal sentences for participation in large-scale drug trafficking operations. With respect to Allen, a below-guidelines sentence was not required by the sentencing judge's comment that the guidelines did not "quite capture" Allen's attempts to assist investigators. With regard to Gonzalez-Perez, his sentence would not have been affected even if the district court had accepted rather than rejected his argument that he was eligible for a safety-valve reduction under U.S.S.G. § 5C1.2(a) even though a firearm was involved in the crime. Gonzalez-Perez was also properly denied a "mitigating role" reduction pursuant to U.S.S.G. § 3B1.2.

Both Allen's and Gonzalez-Perez's convictions were related to what the district court deemed the "J.J.'s Tire Shop" case, a multi-defendant case involving two large-scale drug operations in Memphis, Tennessee. The case developed through investigation of the drug trafficking organization headed by Lorenzo Castelo. Investigators learned that Castelo sold cocaine to brothers Juan Jose Hernandez and Juan Carlos Coss, who operated J.J.'s Tire Shop. Hernandez and Coss acted as wholesalers, selling cocaine out of the shop to several "retailers," including Marcus Allen. Allen made one-kilogram purchases, presumably to repackage for street-level distribution. While investigating the shop's involvement with Castelo, investigators determined that Hernandez and Coss had an additional supply source, brothers Yozvani Gonzalez and Gonzalez-Perez. The Gonzalez brothers were part of an organization separate from Castelo's, headed by Carlos Alvarez.

It is undisputed that Yozvani ran the Gonzalez brothers' distribution system, but Gonzalez-Perez was involved in several aspects of their operation. After intercepting a call between Yozvani and Alvarez in which the two coordinated couriers for a large-volume cocaine delivery, investigators observed Gonzalez-Perez meet with Alvarez's courier and lead him to 3458 Mayflower—which was discovered to be a stash house. On another occasion, Yozvani called Gonzalez-Perez and told him to take "seven" to the shop. Gonzalez-Perez left 3458 Mayflower and was arrested on his way to J.J.'s with seven kilograms of cocaine in his car. Investigators searched the Mayflower house, where Gonzalez-Perez acknowledged he was living. The search uncovered several bales of marijuana with a total weight of 239.95 kilograms, as well as a marijuana growing operation with 18 mature plants. Three additional kilograms of cocaine were found under Gonzalez-Perez's bed, and a revolver was found in the top drawer of a nightstand beside the bed. A total of $986,305 in cash was found in the residence.

-2-

This case had eighteen codefendants. Both Allen and Gonzalez-Perez entered guilty pleas. Allen was convicted of conspiracy to possess with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), 846. Gonzalez-Perez was convicted of conspiracy to possess with intent to distribute and distribution of in excess of 5 kilograms of cocaine and a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846.

Allen had an extensive history of juvenile and adult drug and traffic offenses, as well as convictions for assault and burglary. Allen's record put him in Criminal History Category VI. The drug quantity for which Allen was held liable—at least 500 grams but less than 2 kilograms of cocaine—resulted in a base offense level of 26. Allen received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 23. Allen's advisory guidelines range was 92-115 months' imprisonment.

Although Allen had attempted to cooperate with the Government, his assistance did not merit a § 5K1.1 motion for downward departure. His attorney asked that the court consider a below-guidelines sentence in light of Allen's low position within the distribution network and his efforts to provide assistance. The court declined to vary below the guidelines, but stated that it was appropriate to sentence Allen at the low end of his guidelines range. Allen received a 92-month sentence.

Gonzalez-Perez had a base-offense level of 34 and received a two-level enhancement under § 2D1.1(b)(1) on account of the revolver found in his bedroom. He received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 33. Gonzalez-Perez had no criminal history and was therefore in Category I. His advisory guidelines range was 135-168 months' imprisonment. The court determined that Gonzalez-Perez was not qualified for the safety-

valve reduction in light of the dangerous-weapon enhancement. However, the court expressed the belief that the guidelines range was too high under the facts and instead sentenced Gonzalez-Perez to 120 months' imprisonment, the statutory minimum.

The district court did not commit error in determining that Allen's sentence did not merit a downward variance. Allen argues that it was substantively unreasonable for the district judge to sentence him within the guidelines range after stating that the guidelines did not "quite capture" Allen's attempts to assist investigators. Allen Br. at 12; Allen Sent. Tr. at 15. Whatever the judge's intent in making that statement, the transcript makes clear that he was not suggesting that the guidelines range was excessive. The judge thoroughly explained that he felt that the seriousness of the crime, along with Allen's long list of criminal convictions and history of drug use, merited a within-guidelines sentence. However, because of the "change in [Allen]'s approach,"—referring to the cooperation—the court concluded that a sentence at the low end of the advisory range was appropriate. Allen contends that "[i]f the Guidelines failed to capture this legitimate sentencing consideration, the only logical way to capture it in sentencing the defendant is to sentence him below the Guidelines." Allen Br. at 13. This argument inappropriately isolates and magnifies one positive sentencing factor while ignoring the myriad of negative factors supporting a within-guidelines sentence.

This court has repeatedly rejected defendants' claims that a sentencing court abused its discretion by refusing to vary below the guidelines in light of cooperation. *See United States v. Mendez*, 362 F. App'x 484, 488-89 (6th Cir. 2010); *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009). Allen's case is not made different from these by the fact that the sentencing judge, while

carefully explaining his rationale, commented that the guidelines did not quite capture Allen's efforts at cooperation.

The sentencing judge may have been speaking quite literally in saying that the guidelines did not capture Allen's attempts to assist investigators. That is, while the guidelines worksheet factored in acceptance of responsibility, criminal history, and the volume of drugs involved in this case, it did not include Allen's attempted cooperation. Regardless of whether the district judge had this or something more abstract in mind, it was certainly within his discretion to conclude that the attempt should bring Allen to the low end of the guidelines range rather than below the range.

The judge's decision to sentence Allen within the guidelines range was understandable in light of concerns about Allen's "extensive criminal history," and the judge's belief that Allen could benefit from education, vocational training, and drug treatment in prison. Allen Sent. Tr. at 15. The judge twice explained that he felt the attempted cooperation, while important, did not merit a downward variance. Allen Sent. Tr. at 14, 15. The judge's thoughtful explanation is not erased by Allen's focus on one line of the transcript, and there is no basis for remanding Allen's case.

With respect to Gonzalez-Perez, even if he were able to demonstrate his eligibility for a safety-valve reduction, the district court indicated that it would not go below the statutory minimum; therefore, if any error existed it was harmless and remand is not appropriate. Gonzalez-Perez argues that the district court committed error in concluding that he was not eligible for safety-valve status because he was subject to the § 2D1.1(b)(1) weapon enhancement, but the argument was not made below, *see* Sent. Tr. at 17, and the tension in our opinions on this point makes it hard for Gonzalez-Perez to show plain error. *Compare United States v. Bolka*, 355 F.3d 909, 913 n.5 (6th Cir. 2004) *with United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003).

However, even if there were plain error, such error does not require reversal where, as in this case, the error was harmless beyond a reasonable doubt. *United States v. Russell*, 595 F.3d 633, 643 (6th Cir. 2010). Although safety-valve eligibility would have allowed the judge to sentence Gonzalez-Perez below the statutory minimum, the sentencing transcript reveals that the judge did not think a lower sentence would be appropriate regardless of Gonazalez-Perez's eligibility for the reduction. At sentencing the judge stated:

> When you look at Mr. Gonzalez-Perez and his history and you look at his role in the offense, as best I can, it does seem that the low level [of Gonzalez-Perez's guidelines range] is a little high. Obviously, this is a very serious offense. . . . But my inclination is that the statutory minimum is close to where it ought to be. *Not because I would have any desire to go below the statutory minimum if I had the opportunity. I wouldn't.* I think the statutory minimum is a minimum in this case based on the 3553 factors independently of the statute.

Gonzalez-Perez Sent. Tr. at 40 (emphasis added). Because the district court would not have gone below the statutory minimum, regardless of whether Gonzalez-Perez was eligible for safety-valve status, any error in determining Gonzalez-Perez's eligibility for a safety-valve reduction was clearly harmless and thus does not necessitate remand.

In addition, the district court did not commit clear error in determining that Gonzalez-Perez was not a minor participant in the conspiracy. Gonzalez-Perez sought a mitigating role reduction under § 3B1.2(b), arguing that he acted within his brother's organization as a runner and a guard, not a director. While his brother Yozvani was at a high level in the distribution network, Gonzalez-Perez argues essentially that he was not his brother's partner, but rather a low-level employee. The court acknowledged that Gonzalez-Perez was subordinate to Yozvani, but the court concluded that it could not "say [Gonzalez-Perez] was a minor participant," in part because "[h]e was actually above people in the organization in terms of his importance in the organization." Gonzalez-Perez

Sent. Tr. at 25. The mitigating role reduction is intended for defendants who play "a part in committing the offense that makes [them] substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). The court reviewed the structure and scope of the conspiracy before concluding that Gonzalez-Perez's role was not the type envisioned by § 3B1.2. That finding is not clearly erroneous.

For the foregoing reasons, we affirm both defendants' sentences.