RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 16-1691

SHAWN HOUSE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cr-20268-1—Paul D. Borman, District Judge.

Decided and Filed: June 14, 2017[*]

Before: COOK, KETHLEDGE, and DONALD, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Zenaida R. Lockard, FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Shane Cralle, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

### OPINION

_____

COOK, Circuit Judge. Defendant Shawn House appeals his sentence for conspiring to sell oxycodone. We AFFIRM.

---

[*]This decision was originally filed as an unpublished opinion on June 14, 2017. The court has now designated the opinion for full-text publication.

## I. Background Facts

From 2011 to 2014, House ran a drug-trafficking operation that specialized in distributing oxycodone pills. The operation obtained the pills from a Michigan pain clinic's patients, and employed drug runners to transport the oxycodone to House's network of dealers in Ohio. Once the dealers completed their sales, they remitted the proceeds to the runners, who delivered the drug money to House and fetched the next batch of pills.

In October 2014, Drug Enforcement Administration ("DEA") agents began to penetrate House's organization. They discovered a runner who had relocated from Detroit, Michigan, to Wooster, Ohio, to oversee House's central-Ohio distribution network. From 2011 to 2014, the runner made five to six trips per month to Detroit, delivering drug proceeds and picking up 400 to 800 oxycodone pills each time.

After an encounter with DEA agents in early October 2014, the runner began working as a confidential informant ("CI"), assisting the agents as a go-between carrying out a series of controlled deliveries and pick-ups. The first took place on October 5th, when the former-runner-turned-CI gave House $1,500 in drug proceeds. During this delivery, the CI observed Larry Rouse, another one of House's runners, drop off $5,000 and receive 300 pills. The second happened on October 7th, when the CI picked up 167 pills from Roxann Matter, yet another drug runner.

On October 9th, the CI—at House's direction—handed over $1,950 in drug proceeds to Matter, who then passed the money to House at a separate meeting place. Upon stopping House's vehicle after the meeting, DEA agents found the passenger, Clara Tolon-Garcia, with the marked cash given by the CI to Matter. The agents also conducted a traffic stop of Matter's car and interrogated her. She admitted that from 2013 to 2014, she made trips to House's Detroit apartments at least twice per month to unload drug proceeds and collect 150 to 300 pills, which she would then deliver to House's drug dealers in Ohio.

In the last pair of controlled deliveries, House arranged for the CI to bring a total of $2,650 to Rouse on October 14th and 15th. DEA agents later arrested House.

A grand jury indicted House for conspiring to possess oxycodone with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1), based on his trafficking from 2011 to 2014. Although House pleaded guilty, he maintained during the plea colloquy that the conspiracy with Rouse to sell oxycodone spanned from November 2013 to September or October 2014, not the entire 2011-to-2014 time period alleged in the indictment.

At the sentencing hearing, House challenged the presentencing report's ("PSR") finding that he was "an organizer or leader of a criminal activity that involved five or more participants," U.S.S.G. § 3B1.1(a), arguing that the government had failed to demonstrate "that there w[ere] five or more people . . . involved in th[e] conspiracy." The district court denied House's objection to the leadership enhancement, explaining that it accepted the government's argument that the following individuals counted as coconspirators: House, Rouse, the CI, Matter, and Tolon-Garcia.

House also contended that the PSR should have calculated the quantity of drugs attributable to him using the conspiracy duration he admitted to at his plea hearing (2013 to 2014) rather than the period alleged in the indictment (2011 to 2014). The court ultimately decreased the quantity of oxycodone attributed to House on other grounds, but did not shorten the conspiracy's length to the one-year period House requested.

The court sentenced House to 180 months' imprisonment—below the Guidelines range of 235 to 240 months. House timely appeals.

## II. Leadership Enhancement

We review the district court's "legal conclusion that a person is an organizer or leader under [§] 3B1.1" deferentially, and its factual findings for clear error. *United States v. Olive*, 804 F.3d 747, 759 (6th Cir. 2015) (citing *United States v. Washington*, 715 F.3d 975, 982–83 (6th Cir. 2013)). "Under the clear-error standard, we abide by the court's findings of fact unless the record leaves us with the definite and firm conviction that a mistake has been committed." *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013) (alterations and internal quotation marks omitted) (quoting *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011)).

Section 3B1.1(a) of the Sentencing Guidelines adds four points to a defendant's offense level if he "was an organizer or leader of a criminal activity that involved five or more participants." The commentary to § 3B1.1 defines "participant" as any "'person who is *criminally responsible* for the commission of the offense' with which the defendant has been charged." *United States v. Carroll*, 893 F.2d 1502, 1507 (6th Cir. 1990) (emphasis added) (citing § 3B1.1, cmt. 1).

House argues that the district court erred when it (1) failed to name at least five participants of the conspiracy, (2) counted the informant as a participant, (3) and made no ruling or factual findings with regard to his leadership-enhancement objection. We disagree.

The sentencing transcript refutes House's first claim that the district court didn't identify at least five conspiring participants. During the hearing, the government listed the five participants (House, Rouse, the CI, Matter, and Tolon-Garcia), highlighting that House and Rouse both pleaded guilty to the conspiracy and then elaborating on the roles of the three other individuals. The court stated that "based on the government's statements and the [PSR] . . . [House] was an organizer of this activity that involved five or more participants." Although reciting the names would have established a clearer record, the court was under no obligation to do so since it expressly adopted the government's list of participants, and the record supports the court's findings. *United States v. Thomas*, 373 F. App'x 538, 541 (6th Cir. 2010) ("[O]ur review would be assisted greatly by the district court's identifying the individuals it found were participants in [defendant]'s scheme. But since the court properly held that the numerosity requirement of § 3B1.1 was satisfied, we find no error." (citing *United States v. Vandeberg*, 201 F.3d 805, 809–11 (6th Cir. 2000))).

Next, House contends that the CI cannot be counted as one of the five participants because an informant cannot be held "criminally responsible." But House presents only half the law here. Although an informant cannot be held criminally responsible for his investigative work on behalf of the government, *see United States v. Penaloza*, 648 F. App'x 508, 514 n.3 (6th Cir. 2016) (citing *Carroll*, 893 F.2d at 1508–09), he can be held responsible for his involvement in the criminal activity *before* the informant started cooperating with the government, *United States v. Nanez*, No. 06-6039, 2007 WL 2386474, at *7 (6th Cir. Aug. 21, 2007) (citing *United*

*States v. Dyer*, 910 F.2d 530, 533 (8th Cir. 1990)). Because the CI was a drug runner in the years leading up to his government cooperation, the district court properly found that the CI qualified as a participant.

Last, in his reply brief, House argues that the district court failed under Federal Rule of Criminal Procedure 32(i)(3)(B) to rule on his objection to the number of participants. House has likely forfeited this argument because he did not raise it below and mentions it only in a footnote (without any citation to relevant legal authority) in his opening appellate brief. *United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner . . . are deemed waived.") (citation and internal quotation marks omitted). But even if House had properly objected, the sentencing transcript shows that the district court considered the competing arguments, agreed with the government, and decided that the evidence supported a finding of five participants. We therefore discern no error.

### III. Conspiracy Duration

"We review a district court's drug-quantity finding for clear error." *United States v. Porter*, 560 F. App'x 543, 545 (6th Cir. 2014) (citation omitted).

House argues that the district court's failure to address his objection to the PSR's alleged conspiracy duration led to an erroneous increase in the quantity of drugs attributed to him. But because he offers no contrary evidence to dispute the facts supporting the PSR's conclusion about the conspiracy's length, the district court did not err.

House contended during the sentencing hearing that the district court should have held him responsible solely for the drugs trafficked from November 2013 to October 2014, supporting this argument with his "belief" that he participated in the conspiracy for that time period. Although the district court did not rule on the objection explicitly, it clearly relied on the PSR's finding of a four-year period in calculating the drug quantity.

On appeal, House seeks to bolster his one-year-conspiracy claim with these two facts: (i) he pleaded to a conspiracy stretching from only 2013 to 2014, and (ii) Matter admitted that she participated in the conspiracy for the same period.

Neither of these assertions warrants resentencing. A district court may generally rely on the PSR's facts unless the defendant produces evidence that contradicts the PSR's findings. *United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994) ("A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. . . . [H]e must produce more than a bare denial, or the judge may rely entirely on the PSR." (internal citations omitted)). Here, the PSR's conspiracy timeline comes from the CI's statements that the CI trafficked oxycodone for House from 2011 to 2014. House therefore needed to produce evidence that impugns the CI's credibility or otherwise shows the statements to be unreliable. *See United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quoting *Mustread*, 42 F.3d at 1102). Neither his plea agreement nor Matter's statement casts doubt on the reliability of the CI's statements to DEA agents confirming that House trafficked from 2011 to 2014.

Moreover, that House limited his plea agreement to the 2013-to-2014 timespan does not allow him to evade responsibility for any conduct relevant to sentencing—i.e., his involvement in trafficking oxycodone from 2011 to 2013. *United States v. Louchart*, 680 F.3d 635, 638 (6th Cir. 2012) (noting that "limiting the admission of facts from a guilty plea to . . . those explicitly admitted to by the defendant does not keep the government from supporting a sentence with related conduct"). The district court was therefore free to rely on the PSR's finding on the conspiracy's length, irrespective of House's plea.

## IV. Career-Offender Status

Finally, House claims that the district court erred in sentencing him as a career offender, arguing that his three prior drug convictions do not qualify as predicate offenses under the Sentencing Guidelines. Because he raises this objection for the first time on appeal, we review for plain error. *See United States v. Hickman*, 303 F. App'x 279, 281 (6th Cir. 2008) (citation omitted).

To decide whether a given conviction qualifies as a predicate offense under U.S.S.G. § 4B1.1(a), we generally use the "categorical approach." *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). But where the statute of conviction is "divisible"—i.e., lists elements in the alternative such that the statute "comprises multiple, alternative versions of the crime"—we

employ the "modified categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013). That approach entails sorting through the alternative elements to determine whether any of them "matches an element in the generic offense," and if one does, "consult[ing] a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281; *see also Mathis*, 136 S. Ct. at 2248–49.

House maintains that the controlled-substance statute underlying his three prior drug convictions is indivisible. But we have already addressed Mich. Comp. Laws § 333.7401's divisibility in *United States v. Tibbs*, No. 15-1060, 2017 WL 1314933 (6th Cir. Apr. 10, 2017). Although unpublished, we find its reasoning persuasive and therefore adopt its conclusion that Michigan's controlled-substance statute is divisible. *Id.* at *4–5.

With the question of divisibility resolved, we proceed to the modified categorical approach and make short work of House's challenge to his career-offender designation. Section 333.7401 enumerates several alternative crimes: "manufactur[ing], creat[ing], deliver[ing], or possess[ing] with intent to manufacture, create, or deliver a controlled substance." The generic controlled-substance definition, taken from U.S.S.G. § 4B1.2(b), likewise "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense." The alternative crime in question from Michigan's controlled-substance law— possession with intent to deliver—fits both the Sentencing Guidelines' generic offense— possession with intent to distribute or dispense—and House's charge from his indictment. The district court therefore did not err in counting House's three prior felony drug convictions toward his career-offender enhancement.

## V. Conclusion

For these reasons, we AFFIRM.