**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0680n.06

No. 19-6461

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Dec 02, 2020 |
| **Plaintiff-Appellee,** | ) | DEBORAH S. HUNT, Clerk |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | THE UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| | ) | |
| WALTER EUGENE POWELL, | ) | **OPINION** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| | ) | |

**BEFORE: CLAY, GIBBONS, and NALBANDIAN, Circuit Judges.**

**NALBANDIAN, Circuit Judge.** Walter Powell pled guilty to violating federal drug law based on evidence gathered from his hotel room. He appeals two holdings by the district court. The first was a denial of his motion to suppress evidence from that room. And the second was the district court's designation of Powell as a career offender. For the reasons below, we **AFFIRM**.

I.

A.

Our story starts at the Microtel in Lexington, Kentucky, where Powell had rented a room. While on duty, Eugene Zita—an assistant manager at the hotel—received complaints from an employee that there was a strong marijuana odor coming from a room. She investigated the smell and tracked it to Powell's room, Room 122. After knocking on the door and receiving no response, Zita decided to evict the room's occupants because the Microtel had a strict no-smoking policy.

So Zita called the police "to help [her] out" "[i]n case they are dangerous people." (R. 41, Tr. of Suppression Mot. Proceedings, PageID # 185.) Zita testified that she didn't want the police to arrest the evicted guests or even search their things; she only "wanted them to help [her] get this person out of the hotel." (*Id.* at PageID # 187.)

Lexington Police Department Officers Christopher Johnson and Paul Hogan responded to Zita's call. When they arrived, they visited Zita at the hotel's front desk, but she was busy, so she directed them toward Powell's room. Hogan and Johnson went to the room and knocked but, like Zita, received no response. Officer Johnson then walked around to the outside of the hotel to check if he could see inside the room through the window, but the blinds were drawn.

The officers returned to the front desk, and Zita told them "she wanted to evict" the occupants of Room 122. (*Id.* at PageID # 147.) She made either a master key or duplicate key[1] and walked back to Powell's room with the officers. Zita knocked on the door, announced herself, and, after receiving no response, used her key to enter the room. The officers stepped into the room with Zita to conduct a protective sweep. As soon as it was clear no one was present, the officers stepped back out to the threshold of the room, holding the door open. The officers remained in the doorway of the room to ensure that the occupants didn't return and harm Zita.

Zita, however, stayed inside the room. With no prompting from the officers, Zita began to go through her "pattern" and "automated process" of inspecting the room. (*Id.* at 184–85.) This included looking inside drawers and the room's refrigerator. Zita conducted this inspection because, after she smelled marijuana, she was looking for evidence to charge the guest a fee for

---

[1] The testimony of Officer Johnson and Eugene Zita makes it unclear if Zita used a master or duplicate key to enter Powell's room. But the district court, in its opinion and order denying Powell's motion to suppress, stated that Zita produced a master key to get inside the room.

smoking inside. Her intention, according to her testimony, wasn't to find evidence of smoking to turn over to the police, but only to support the charge for smoking.

During her inspection, Zita opened the room's refrigerator. Inside, she saw a "brown, kind of squarish" package inside a black bag. (*Id.* at PageID # 182, 195.) She then asked the officers, "Can I take it out?", and both told her she could. (*Id.* at PageID # 208.) The officers didn't tell Zita to search anything or open the refrigerator, and Zita testified that it was her decision to open the refrigerator. But she also testified that if the officers told her to leave the package inside the refrigerator, she would've, and that she "gave [the officers] the decision" of whether to take the package out. (*Id.* at PageID # 209, 216.) Officer Johnson, on the other hand, testified that he "was trying to leave it to [Zita's] discretion" whether to take the package out of the refrigerator. (*Id.* at PageID # 151.)

Either way, Zita pulled the bag out of the refrigerator and began to walk toward the officers, and Officer Hogan walked toward her to inspect it. Hogan took the package, then, recognizing the contents as containing fentanyl, placed it on a table. Zita continued her search, discovering various other pieces of contraband and evidence of drug trafficking. Eventually, she called Powell and told him that he needed to return to his room because a pipe had burst. When Powell arrived, police arrested him.

B.

Based on the evidence discovered in Powell's hotel room, the government charged Powell with various drug offenses, including possession with intent to distribute fentanyl. Powell moved to suppress the evidence from the Microtel, arguing that the search violated the Fourth Amendment. He argued that Zita acted as the government's agent when she searched his room, so she needed a warrant before doing so. And he also argued that he retained an expectation of

privacy in the room until well after Zita discovered the drugs in the refrigerator. The district court denied the motion to suppress, finding that Zita was not the government's agent and that Powell lacked standing to challenge the search because the Microtel evicted Powell before Zita discovered the drugs. The eviction destroyed Powell's expectation of privacy in the room, so he lacked standing to challenge the search.

Powell then pled guilty to Count 2 of a Second Superseding Indictment—possession with intent to distribute 40 grams or more of a substance containing a detectable amount of fentanyl. He reserved the right to appeal whether he had a reasonable expectation of privacy in his hotel room.

Before sentencing, Powell's presentence investigation report revealed that he had multiple convictions for delivery/manufacture of heroin or cocaine in violation of Mich. Comp. Laws § 333.7401. So the report classified Powell as a career offender under § 4B1.1 of the Federal Sentencing Guidelines because Powell's Michigan convictions qualified as controlled substance offenses. Powell objected to that classification, but the district court overruled him and applied the career-offender sentence enhancement. Powell's guideline sentence range was, as a result of the enhancement, 188 to 235 months, and the district court imposed a 210-month sentence.

Powell now appeals the district court's denial of his motion to suppress the evidence from the Microtel. He also appeals his sentence, arguing that the district court erred in classifying him as a career offender. We affirm in both respects.

## II.

In reviewing the district court's denial of Powell's motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001). "A factual finding will only be clearly erroneous

when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 706 (6th Cir. 1999)). We consider the evidence in the light most favorable to the government and most likely to support the district court's decision. *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008); *Navarro-Camacho*, 186 F.3d at 705. If the district court's "conclusion can be justified for any reason," we will affirm the denial of the suppression motion. *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994).

On the other hand, a district court's determination that a prior offense qualifies as a controlled substance offense is a legal determination that we review de novo. *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020).

## A.

We begin with the suppression motion. Powell argues that police searched his hotel room in violation of the Fourth Amendment. To win on this argument, Powell must establish two things: first, that Zita was the government's agent when she searched his room, and second, that the Microtel hadn't evicted him yet, preserving his reasonable expectation of privacy in the room. Because Powell can't pass the first hurdle, we need not reach the eviction issue.

"[T]he Fourth Amendment proscribes only governmental action." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). So it doesn't apply to a search or seizure—even an unreasonable one—conducted "by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *Id.*; *see United States v. Jacobsen*, 466 U.S. 109, 113 (1984). And when a person delivers evidence to police that he found

5

during a private search, it's not excludable just because he obtained it without a warrant. *United States v. Clutter*, 914 F.2d 775, 778 (6th Cir. 1990).

We've developed a two-part test for determining when a "private" person acts as the government's agent. First, the police must instigate, encourage, or participate in the search. *Lambert*, 771 F.2d at 89. And second, the individual must "engage[] in the search with the intent of assisting the police in their investigative efforts." *Id.* The defendant must establish both prongs before the Fourth Amendment applies.

Whether a person acts as an agent of the government "necessarily turns on the degree of the Government's participation in the private party's activities." *Skinner v. Ry. Lab. Execs' Ass'n*, 489 U.S. 602, 614 (1989). But some bare level of contact between the person and the police isn't enough. "A person will not be acting as a police agent merely because there was some antecedent contact between that person and the police." *Lambert*, 771 F.2d at 89. Likewise, where the intent of the party conducting the search "*is entirely independent* of the government's intent to collect evidence for use in a criminal prosecution," the party isn't the government's agent. *United States v. Hardin*, 539 F.3d 404, 418 (6th Cir. 2008) (emphasis in original) (quotations omitted). And "there is no seizure within the meaning of the fourth amendment when an object discovered in a private search is voluntarily relinquished to the government." *United States v. Coleman*, 628 F.2d 961, 966 (6th Cir. 1980).

Zita wasn't the government's agent when she searched Powell's room. Indeed, Powell cannot show that her actions meet either prong of the *Lambert* test. To see why, consider a case in which we found agency: *United States v. Hardin*, 539 F.3d at 404. Hardin had an active warrant for his arrest, and police received a tip that he was staying in an apartment. 539 F.3d at 407. So they approached the apartment manager and asked him to enter the apartment to see if Hardin was

there. *Id.* The police devised a ruse—which was "without a doubt" their idea—where the manager would pretend to check for a water leak. *Id.* When the manager completed the ruse and confirmed Hardin's presence, police entered the apartment without a warrant and arrested Hardin. *Id.* at 408. They also recovered drugs, cash, and several firearms. *Id.*

Hardin moved to suppress this evidence, but the district court denied the motion. *Id.* at 408–09. We reversed. *Id.* at 420. We noted that the ruse was the design of the government (*Lambert* prong one), the police asked the manager to enter the apartment (also prong one), and the manager had no reason to enter the apartment independent of his intent to assist the police (prong two). *Id.* at 419. So "the manager was acting as an agent of the government" when he entered the apartment. *Id.* at 420.

But the facts we relied on in *Hardin* to find agency are missing here. Unlike in *Hardin*, Zita's reason for entering Powell's room didn't come from the government. Indeed, Zita decided on her own to evict Powell. And neither did the police ask Zita to conduct the search, like they did the apartment manager in *Hardin*. Instead, they accompanied her to Powell's room to ensure her safety and then withdrew to the doorway when it was clear Powell wasn't there. So evidence showing police instigation and participation—the first *Lambert* prong—is absent here. And besides, evidence establishing the second prong is also missing. Zita was going through her habitual and "automated" process of inspecting Powell's room and looking for evidence to charge him a fee for smoking. So, unlike the apartment manager in *Hardin*, she had a reason to search his room independent of her intent to assist the police in a criminal investigation.

Now consider some cases in which we found agency lacking. Start with *United States v. Howard*, 752 F.2d 220 (6th Cir.), *opinion vacated on other grounds*, 770 F.2d 57 (6th Cir. 1985) (en banc). After the Howard residence burned down, both police and the homeowners' insurance

7

company investigated the remains for arson. *Id.* at 227. Although the insurance investigator could enter the property under the insurance contract, the police had neither a warrant nor the Howards' consent. *Id.* So when the government eventually prosecuted Howard and others for crimes related to the house fire, the district court wouldn't allow it to introduce testimony from the investigating officer, which the court viewed as fruit of an unlawful search. *Id.* The district court did, however, allow the insurance investigator to testify. *Id.*

The defendants appealed the introduction of that testimony. *Id.* They argued that the investigator was the government's agent. *Id.* We disagreed—even though "there is no question that the government had knowledge of, and even participated in the search." *Id.* In other words, there was no question that the defendants satisfied the first *Lambert* prong, but they faltered on the second. That's because the knowledge and participation of the police alone weren't enough. Instead, where "the intent of the private party conducting the search is entirely independent of the government's intent to collect evidence for use in a criminal prosecution, . . . the private party is not an agent of the government." *Id.* And "when police are merely assisting a private party, who has authority to search and a legitimate need to do so, . . . courts are reluctant to exclude resulting evidence." *Id.* at 227–28 (alteration in original) (quoting *United States v. Capra,* 501 F.2d 267, 272 n.4 (2d Cir. 1974), *cert. denied,* 420 U.S. 990 (1975)). So the investigator was lawfully on the property, and his actions weren't attributable to the government. *Id.* at 228.

There are important similarities—and equally important distinctions—between the search in *Howard* and the search here. Like *Howard*, the police were present when the search happened. But that was hardly dispositive in *Howard* because that only goes to the first *Lambert* prong. Besides, it's hardly clear police "participated" in Zita's search here like they did in the search in *Howard*. Indeed, unlike *Howard*, the police weren't in Powell's room to investigate anything or

8

gather evidence for prosecution. *See Lambert*, 771 F.2d at 89 ("First, the police must have instigated, encouraged or participated in the search."). They were just there to protect Zita if anything went south during Powell's eviction. At any rate, like the defendants in *Howard*, Powell can't satisfy the second *Lambert* prong. Just as the insurance investigator had his own reason to search the Howards' house, distinct from the government's, Zita's reason for searching the room was to gather evidence for a smoking charge. That's independent of any law enforcement purpose. The officers were, in other words, "merely assisting" Zita in a passive, unengaged way, unrelated to an investigatory intent. *Howard*, 752 F.2d at 227.

Next, consider *United States v. Bruce*, 396 F.3d 697 (6th Cir.), *vacated in part on reh'g on other grounds*, 405 F.3d 1034 (6th Cir. 2005). Bruce checked into a hotel and paid for a week's worth of lodging. 396 F.3d at 702. But a few days later, the hotel manager called the police to report the smell of burning marijuana coming from either Bruce's or his companions' room. *Id.* The police asked the hotel to save, secure, and mark the trash bags from those rooms—and hotel employees were eligible for a cash reward for their assistance. *Id.*; *id.* n.2. After discovering contraband in the trash, the police obtained search warrants for the rooms and arrested Bruce. *Id.* at 703–04. Bruce unsuccessfully moved to suppress the evidence from the rooms and then appealed after entering a guilty plea. *Id.* at 704.

We held that the hotel's handling of Bruce's trash didn't violate the Fourth Amendment, *id.* at 705, because neither of the *Lambert* prongs was met. *Id.* at 706. For one thing, "[t]here [wa]s no evidence that the staff were asked to look around the rooms, report any suspicious items, or otherwise deviate from their typical cleaning routine." *Id.* For another, "hotel employees initiated contact with the police, and not vice versa, based on their detection of an apparent marijuana smell emanating from" Bruce's room. *Id.* And even though the government provided

a financial incentive to the employees to assist them, that still wasn't enough to make them the government's agents. *Id.* That's because "they undoubtedly had the distinct and independent intent—and, indeed, the obligation—to clean these rooms and empty their trash, just as they would do with any other room in the hotel." *Id.* So the employees didn't become government agents just "because the police took an interest in the items they planned to remove from the room during their normal cleaning activities." *Id.*

If the employees in *Bruce* weren't government agents, then Zita wasn't, either. The police were more actively involved in directing hotel staff in *Bruce*—and the staff were more focused on assisting a police investigation—than here. The police in *Bruce* told the employees what to do and how to do it. Here, though, they passively stood by for protection as Zita searched the room. The only evidence that Powell points to as showing agency is the ambiguous interaction between Zita and the officers just after Zita opened the refrigerator and noticed Powell's contraband.

But if obeying police direction in sorting trash—and expecting a reward for that assistance—doesn't make a person the government's agent, then neither does asking officers "Can I take it out?" after discovering a package of drugs and waiting for a response. Besides, cooperation between Zita and the officers—if this can even be called that—doesn't necessarily mean that Zita became the government's agent. *See Howard*, 752 F.2d at 227 ("We find, however, that the insurance company investigator while cooperating with the police was not acting as an agent of the government."). That's because agency requires more. It requires *both* that police participate in the search *and* that the private party intend to assist law enforcement. *Lambert*, 771 F.2d at 89. So even if this ambiguous interaction between Zita and the police could amount to police "instigation" or "participation," Powell still needs to show that Zita intended to assist a police investigation. And he fails to do so.

At any rate, we doubt the interaction rose to the level of police participation. *Bruce*, 396 F.3d at 706. Officers Johnson and Hogan didn't ask Zita to "look around the room[], report any suspicious items, or otherwise deviate from [her] typical cleaning routine." *Id.* Instead, Zita "initiated contact with the police, and not vice versa, based on [her] detection of an apparent marijuana smell emanating from" Powell's room. *Id.* And even assuming the moment at the refrigerator satisfies the first *Lambert* prong (which we doubt), Zita still "undoubtedly had the distinct and independent intent—and, indeed, the obligation—to clean" Powell's room out. *Id.*

So Zita's search meets neither of the *Lambert* prongs. And none of Powell's other arguments to the contrary is persuasive. Powell states: "All along, Zita was ready to assist police." (Appellant Br. at 25.) But the record doesn't support this argument—she wasn't there to assist police, but police were there to protect her during an eviction. And it can hardly be said that Zita was more "ready to assist police" than the employees in *Bruce,* whom the government *paid* for their assistance. *Bruce*, 396 F.3d at 702 n.2. Besides, Zita "had the distinct and independent intent" and obligation to clear Powell's room out and find evidence to charge him a smoking fee. *Id.* at 706; s*ee id.* ("[W]hatever motive or incentive the hotel employees might have had to assist the police in detecting unlawful activity … they undoubtedly had the distinct and independent intent—and, indeed, the obligation—to clean these rooms and empty their trash, just as they would do with any other room in the hotel.").

Powell also argues that Zita was "looking for evidence of illegal activity." (Appellant Br. at 26 (quotations omitted).) Maybe so, but that's not what matters. The court looks at Zita's *intent* when she conducted the search. *Lambert*, 771 F.2d at 89. And her intent wasn't to assist an

11

investigation, but to obtain evidence to further support her decision to evict Powell and charge him a smoking fee.[2]

Next, Powell relies on the fact that Johnson and Hogan "stood inside" while Zita went through Powell's room, speaking with them all the while. (Appellant's Br. at 24.) But "when police are merely assisting a private party, who has authority to search and a legitimate need to do so, . . . courts are reluctant to exclude resulting evidence." *Howard*, 752 F.2d at 227–28 (alteration in original) (quoting *Capra*, 501 F.2d at 272 n.4). And mere cooperation between the parties, by itself, isn't enough to establish agency. *Id.* at 227.

Powell fails to shoulder his burden of showing that Zita's actions meet the *Lambert* standard. So we don't need to reach the issue of whether Powell had a reasonable expectation of privacy in his hotel room at the time of the search. The Fourth Amendment doesn't apply to Zita's search. We thus affirm the district court's denial of Powell's suppression motion.

B.

Powell also challenges his designation as a career offender, although he acknowledged at oral argument that recent circuit precedent forecloses his challenge. Powell's presentence investigation report found, and the district court agreed, that Powell's convictions under Mich. Comp. Laws § 333.7401(2)(a)(iv) were controlled substance offenses. That qualified him for a career offender sentencing enhancement. Powell objects, and we review his claim de novo. *See United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020).

Under the Federal Sentencing Guidelines, a career offender has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

---

[2] Powell also argues that Zita would have no reason to look for evidence of illegal activity unless she intended to assist the police. This is wrong. Zita testified that she was searching the room to find evidence of smoking so she could charge Powell a fee.

The Guidelines in turn define a "controlled substance offense" as one that, under state or federal law, is punishable with a prison term of more than a year and prohibits the manufacture, import, distribution, or dispensing of a controlled substance, or possession of a controlled substance with intent to perform any of these acts. *Id.* § 4B1.2(b). This tracks the Federal Controlled Substances Act, which makes it unlawful to "manufacture, distribute, or dispense" certain drugs. 21 U.S.C. § 841(a)(1). And "distribute" in the CSA means "delivery": the "actual, constructive, or attempted transfer" of drugs. *Id.* § 802(8), (11).

A person with multiple controlled-substance offenses faces an increased prison term as a career offender. *Garth*, 965 F.3d at 495. So when the probation officer and later the district court designated Powell a career offender, it caused his offense level under the Sentencing Guidelines to jump from 26 to 34—which bumped up his sentence range. That designation hinged on Powell's multiple convictions for violating Mich. Comp. Laws § 333.7401—in particular, delivery/manufacture of cocaine and heroin. Section 333.7401(1) states: "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance."

Normally, to determine whether a statute is a "controlled substance offense" that triggers the career offender enhancement, we use what's known as the categorical or modified categorical approach. *Garth*, 965 F.3d at 495. But we don't need to perform that complicated analysis here. We've already held that Powell's violation of § 333.7401 is a controlled substance offense. *United States v. Thomas*, 969 F.3d 583, 584 (6th Cir. 2020) (per curiam) (holding that delivery of heroin in violation of § 333.7401 is a controlled substance offense); *see also United States v. House*,

872 F.3d 748, 753–54 (6th Cir. 2017).[3]  And we've said the same about other states' statutes with language virtually identical to our Michigan statute.  *See Garth*, 965 F.3d at 496.

Still, after *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), there appears to be some confusion about this in lower courts.  *Compare United States v. Tillman*, No. 1:07-cv-197, 2020 WL 1950835, at *3 (W.D. Mich. Apr. 23, 2020) (holding that previous convictions under § 333.7401(2)(a)(iv) were controlled substance violations) *with United States v. McDougle*, No. 19-20323, 2020 WL 3639589, at *1 (E.D. Mich. July 6, 2020) (holding that the defendant's prior conviction under § 333.7401 "does not qualify as a controlled substance offense under the federal sentencing Guidelines").  To be clear, under a plain reading of the relevant statutory language and our precedent, Powell's convictions for violating § 333.7401 are controlled substance offenses under § 4B1.1(a) and 4B1.2(b) of the Sentencing Guidelines.

The district court didn't err in designating Powell a career offender.  We affirm.

## III.

For these reasons, we affirm both the district court's denial of Powell's motion to suppress and its designation of Powell as a career offender.

---

[3] *See also United States v. Williams*, 762 F. App'x 278, 280–82 (6th Cir. 2019); *United States v. Pittman*, 736 F. App'x 551, 555 (6th Cir. 2018); *United States v. Brown*, 727 F. App'x 126, 129 (6th Cir. 2018); *United States v. Tibbs*, 685 F. App'x 456, 463–64 (6th Cir. 2017); *Hopkins v. United States*, No. 17-1599, 2017 WL 9477084, at *2 (6th Cir. Nov. 2, 2017) (order); *United States v. Solomon*, 592 F. App'x 359, 361–62 (6th Cir. 2014).