NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0031n.06

Nos. 22-1110/22-1112

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Jan 13, 2023 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| JOSEPH DAVID BURGESS (22-1110); | ) | THE WESTERN DISTRICT OF |
| LISA RENE BURGESS (22-1112), | ) | MICHIGAN |
|  | ) |  |
| Defendants-Appellants. | ) | OPINION |
|  | ) |  |
|  | ) |  |

**Before: MOORE, GIBBONS, and LARSEN, Circuit Judges.**

LARSEN, J., delivered the opinion of the court in which GIBBONS, J., joined in full, and MOORE, J., joined in part. MOORE, J. (pp. 12–14), delivered a separate opinion concurring in part and dissenting in part.

**LARSEN, Circuit Judge.** Joseph and Lisa Burgess pleaded guilty to offenses stemming from a drug trafficking conspiracy. They now appeal their sentences. Because the district court did not err in sentencing the Burgesses, we AFFIRM.

I.

Joseph and Lisa Burgess, a married couple, trafficked significant quantities of methamphetamine from their residence in Lansing, Michigan, as part of a larger conspiracy. Confidential informants tipped off law enforcement about the Burgesses' involvement. An investigation ensued, and in January 2020, officers executed a search warrant at the Burgesses' home and seized 1,341.9 grams of methamphetamine, forty-eight guns, and over $16,000 in cash. They were both charged with conspiracy to distribute and possess with intent to distribute fifty

grams or more of methamphetamine, in violation of 21 U.S.C. § 846, and possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Joseph also was charged with possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i). On the morning their jury trial was set to begin, the Burgesses pleaded guilty to all charges. The district court sentenced Joseph to 292 months in prison for the drug offenses and 60 months for the firearm offense, to be served consecutively. The court sentenced Lisa to 235 months in prison. Both sentences were at the bottom of the relevant Guidelines ranges. The Burgesses timely appealed their sentences.

II.

Joseph Burgess raises three specific sentencing issues on appeal: the assessment of a four-level leadership enhancement, the denial of a downward departure for his health issues, and the denial of his motion for a downward variance. We address each in turn.

*Leadership Enhancement.* Joseph argues that the district court erred by imposing a four-level leadership enhancement to his base offense level. We review the district court's legal conclusion that Burgess was a leader "deferentially, and its factual findings for clear error." *United States v. Sexton*, 894 F.3d 787, 794 (6th Cir. 2018) (quoting *United States v. House*, 872 F.3d 748, 751 (6th Cir. 2017)). "[W]e abide by the court's findings of fact unless the record leaves us with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *House*, 872 F.3d at 751).

The Guidelines recommend a four-level enhancement for a defendant who was "an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). To qualify for the enhancement, the defendant must have been the "organizer, leader, manager, or supervisor of one or more other participants." *Id.* cmt. n.2. In considering whether a

defendant is an organizer or leader, "the court should consider . . . the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* cmt. n.4. The court "need not find each factor in order to warrant an enhancement." *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012).

The district court did not err in imposing the leadership enhancement. The court weighed the pertinent factors and found that Joseph's involvement was extensive. It reasonably concluded that Joseph had significant decision making authority because he set the drug prices, quantities, method of payment, and other relevant terms for other participants. The court also considered the fact that Joseph took the largest share of the profits. And the court found that Joseph had control over several conspiracy participants based on the PSR report, informant testimony, and his text messages. All this evidence supports the court's finding that Joseph was a leader of the conspiracy.

Joseph argues he was just a "middleman" and was therefore not eligible for the enhancement. But the evidence the district court relied on to assess the enhancement suggests he played a more significant role. Because there was sufficient evidence to support the court's finding that Joseph's involvement went beyond mere buying and selling, and that he had control over at least one other participant, the district court did not err by assessing the four-level leadership enhancement. *See United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994); *United States v. Davis*, 815 F. App'x 908, 914–15 (6th Cir. 2020); *United States v. Caro-Silva*, 815 F. App'x 836, 842 (6th Cir. 2020).

*Departure.* Joseph next argues that the district court erred by denying his motion for a downward departure under U.S.S.G. § 5H1.4, which authorizes a departure for defendants with an "extraordinary physical impairment." Joseph believes the departure is warranted because he suffers from an undiagnosed neurological condition that seriously impairs his vision. But we may not review a district court's denial of a downward departure "unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Taylor*, 818 F. App'x 495, 505 (6th Cir. 2020) (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)). Here, the district court expressly considered Joseph's motion for a departure but concluded that a departure was not warranted in light of Joseph's particular medical difficulties. The court therefore understood its discretion to grant the departure but decided not to. So we cannot review the court's decision to deny the departure.

*Variance.* Joseph also argues the district court erred by refusing to vary downward and thus imposing a substantively unreasonable sentence. We review for an abuse of discretion. *United States v. Owen*, 940 F.3d 308, 317 (6th Cir. 2019). We presume that a sentence within the Guidelines range, like Joseph's, is reasonable. *Id.*

Joseph argues that he should have been granted a downward variance based on a perceived disparity between his 292-month sentence and that of coconspirators Garylee Dexter, who received 108 months,[1] and Kendra Stidolph, who received 45 months. But "the district court was not even required under § 3553(a)(6) to assess the local disparities of a sentence; rather, the focus of § 3553(a)(6) is on national disparities, not specific individual cases." *United States v. Parrish*,

---

[1] The Burgesses' argument that Dexter's sentence effectively amounts to "zero" months because he was sentenced concurrently to a state sentence for an unrelated homicide charge is mistaken. Should Dexter's state sentence be vacated, he would still have to serve his federal sentence of 108 months.

915 F.3d 1043, 1049 (6th Cir. 2019) (citation and internal quotation marks omitted).  In any event, the district court explained the reasons for the disparities.  *See United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008) ("Disparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government.").  Unlike Dexter and Stidolph, Burgess was assessed a leadership enhancement and was held accountable for a much higher drug quantity.  And unlike Dexter and Stidolph, Burgess did not receive full credit for acceptance of responsibility because he chose not to plead guilty until the day of trial.

Joseph also argues that the district court should have granted a downward variance for his "unrewarded cooperation."  Joseph had initially agreed to cooperate with the government but later decided he wanted to proceed to trial.  As a result, Joseph did not receive a § 5K1.1 departure for cooperation.  Then, on the morning his trial was set to begin, he changed his mind and decided to plead guilty.  Joseph now argues that the district court should have granted a downward variance for his cooperation but did not do so because the court did not understand its discretion to grant the variance.  At sentencing, the district court explained that the mere fact that other conspirators had received cooperation credit, but the Burgesses had not, "does not give me a reason to grant a variance."

Joseph casts this statement as evidence that the district court did not understand its discretion to grant a variance based on cooperation, even in the absence of a § 5K1.1 motion from the government.  But we see no evidence of confusion on the district court's part.  Indeed, "we presume that the district court understood its discretion" to grant a variance, "absent clear evidence to the contrary." *United States v. Ruiz*, 777 F.3d 315, 321–22 (6th Cir. 2015) (quoting *Santillana*, 540 F.3d at 431).  Here, Joseph cited the relevant caselaw in his motion to the district court and at

the sentencing hearing, and it is evident that the district court read the motion and heard the argument. There is no evidence that the district court misunderstood its discretion. It just decided, reasonably, not to grant a variance based on Joseph's eleventh-hour guilty plea and his early, but withdrawn, offer to cooperate. *See, e.g.*, *United States v. Allen*, 444 F. App'x 867, 869 (6th Cir. 2011).

Joseph offers several other reasons why he believes the district court should have granted a downward variance, including his unusual health condition, compliance on bond, improved conduct, the short duration of the conspiracy, and the fact that he claims he originally joined the conspiracy to save Dexter's life. The district court considered these arguments, weighed the relevant § 3553(a) factors, and ultimately determined that a downward variance was not appropriate in this case. Because the weighing of the § 3553(a) factors "is a matter of reasoned discretion, not math," we are highly deferential to the district court's sentencing decisions. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Joseph's bottom-of-the-Guidelines sentence was reasonable.

III.

Lisa Burgess also raises three distinct sentencing issues on appeal: the assessment of a firearm enhancement, the denial of a minor role adjustment, and the denial of a downward variance. We address each in turn.

*Firearm Enhancement.* Lisa challenges the two-level enhancement the district court levied pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing firearms in connection with her drug offenses. The commentary to the Guidelines explains that this "enhancement should be applied if the weapon is present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.11(A).

For the enhancement to apply, the government must show "by a preponderance of the evidence that '(1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense.'" *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012) (quoting *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007)) (*abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)). Lisa concedes she possessed the firearms during the drug-trafficking operation. Thus, there is a presumption that they were used in connection with the offense. *See, e.g.*, *United States v. Bolka*, 355 F.3d 909, 912 (6th Cir. 2004). It is Lisa's burden to show that it was "clearly improbable" that the weapons were connected to the offense. *Catalan*, 499 F.3d at 606. "[T]he clearly improbable standard is a difficult burden to meet in the first instance at sentencing; moreover, on appeal, we review the district court's application of § 2D1.1(b)(1) for clear error." *United States v. Clisby*, 636 F. App'x 243, 247 (6th Cir. 2016) (alteration in original) (internal quotation marks omitted). Factors relevant to that determination include the type of weapon involved, the accessibility of the weapon to the defendant, the presence of ammunition, the proximity of the weapon to the illicit drugs, the defendant's evidence concerning the use of the weapon, and whether the defendant engaged in trafficking. *See, e.g.*, *United States v. Edmonds*, 9 F. App'x. 330, 332 (6th Cir. 2001). No single factor is controlling. *Id.*

Forty-eight firearms were recovered from the Burgesses' home, including semi-automatic pistols, an AR-15 rifle, revolvers, shotguns, and long rifles, along with 12,000 rounds of ammunition. The court found that the guns were "everywhere" in the house, including loaded guns in close proximity to the stored drugs. The record establishes that the guns were visible to conspirators who came to the house to purchase drugs from the Burgesses. Further, the mere

presence of the guns likely emboldened the Burgesses in their drug trafficking and helped protect the drugs and funds stored at the house.

Lisa argues that it was clearly improbable that she possessed the weapons in connection with her drug offenses because the conspiracy only lasted for a few months and because she acquired the firearms for legal reasons, such as hunting, target practice, and collecting guns as a hobby. She argues that "the guns did not change character from legal possession to possession in connection with a drug crime during the three months the conspiracy lasted." Appellant Br. at 22–23. But the district court heard and reasonably rejected these arguments at Lisa's hearing. The court noted that the fact that the guns might have been used for lawful purposes did not change the fact that they were *also* used for *unlawful* purposes. Considering all relevant evidence, the court concluded it was not clearly improbable that the weapons were connected to the offense. Because Lisa has failed to show that the firearms were possessed *only* for lawful purposes, the district court did not err in assessing the enhancement. *See, e.g.*, *United States v. Moses*, 289 F.3d 847, 851 (6th Cir. 2002).

*Minor Role Adjustment.* Lisa argues that the district court erred by declining to grant her a two-level decrease in her base offense level as "a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). A "minor participant" is one who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5. Whether this adjustment applies is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* cmt. n.3(C). We review the district court's denial of a mitigating role adjustment for clear error. *United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010).

The court considered the relevant Guidelines factors and concluded, based on a totality of the circumstances, that Lisa did not have a minor role in the conspiracy. The court found and the record supports that Lisa had substantial knowledge of the conspiracy, kept track of money for her husband and coconspirator Dexter, had significant decision making authority, and benefited financially from the conspiracy. Lisa admitted that she drove her husband around to conduct drug transactions and went on drug trips with other conspirators. The court heard and rejected Lisa's arguments that she was only involved because she was Joseph's wife and because she lived in the family home. Nor did it credit Lisa's argument that she did not stand to benefit from the conspiracy because she had a stable job of her own. The evidence supports the district court's finding that Lisa was not less culpable than most of the other participants in the conspiracy.

*Downward Variance.* Lisa also argues the district court abused its discretion in denying her motion for a downward variance. She relies on largely the same arguments her husband makes in support of a downward variance; those arguments fail for the same reasons discussed above with respect to Joseph. The district court did not abuse its discretion in denying a downward variance, nor has Lisa overcome the presumption of reasonableness afforded her within-Guidelines sentence. *See United States v. Bradley*, 845 F. App'x 439, 444 (6th Cir. 2021).

## IV.

The Burgesses raised new arguments in their reply briefs: that Joseph's firearms conviction and Lisa's firearms enhancement violate the Second Amendment. Neither claim was presented to the district court, so any review we might undertake would be for plain error only. *See* Fed. R. Crim. P. 52. But neither claim was presented in the Burgesses' opening briefs on appeal either, so each is forfeited. *See, e.g.*, *United States v. Presley*, 18 F.4th 899, 902 n.2 (6th Cir. 2021) (finding an argument forfeited "because it was first raised in a reply brief"). The

Burgesses ask us to overlook the forfeiture, claiming that they could not have anticipated that *New York State Rifle Association v. Bruen*, 142 S. Ct. 2111 (2022), would partially abrogate this court's decision in *United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012). Even if there might be circumstances in which intervening Supreme Court precedent would excuse a forfeiture, *Bruen* does not help the Burgesses here.

*Bruen* abrogated the second step of *Greeno*'s approach to analyzing Second Amendment challenges. *Bruen*, 142 S. Ct. at 2127 ("Despite the popularity of this two-step approach, it is one step too many."). But *Bruen* left in place the first step, which asks whether "the government can prove that the regulated conduct falls beyond the Amendment's original scope." *Id.* at 2126; *see also id.* at 2127 ("Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history.").

In *Greeno*, this court held at the first step that "the Section 2D1.1(b)(1) enhancement is consistent with the historical understanding of the right to keep and bear arms, which did not extend to possession of weapons for unlawful purposes." 679 F.3d at 520. So the conduct regulated by the enhancement fell "outside the scope of the Second Amendment right as historically understood." *Id.* *Bruen* did not disturb that holding, so it does not help Lisa.[2]

*Bruen* does not help Joseph either. At his plea hearing he answered "yes" to the question whether he had possessed firearms in furtherance of his drug crimes. *Greeno* held at step one that the original understanding of the Second Amendment "did not extend to possession of weapons for unlawful purposes." 679 F.3d at 520. *Bruen* did not disturb that step-one analysis. *Bruen*

---

[2] It makes no difference that Lisa characterizes her belated argument as an as-applied challenge. The question is still a step-one question: whether her conduct fell "outside the scope of the Second Amendment right as historically understood." *Greeno*, 679 F.3d at 520. And *Greeno* considered the possibility of as-applied challenges. *See id.* at 521. *Bruen* did not change the landscape on this front.

instead referred repeatedly to the rights of "*law-abiding* citizens." 142 S. Ct. at 2122 (emphasis added); *see also, e.g.*, *id.* at 2131, 2156. So, having admitted to conduct "outside the scope of the Second Amendment right as historically understood," *Greeno*, 679 F. 3d at 520, Joseph cannot seek refuge in *Bruen.*

\* \* \*

We AFFIRM.

**KAREN NELSON MOORE, Circuit Judge**, **concurring in part and dissenting in part.**

I concur with the majority, except as to its determination that the district court properly applied the leadership enhancement to Joseph Burgess ("Burgess").

We review the district court's determination that Burgess was a leader "deferentially, and its factual findings for clear error." *United States v. Sexton*, 894 F.3d 787, 794 (6th Cir. 2018) (quoting *United States v. House*, 872 F.3d 748, 751 (6th Cir. 2017)).

To qualify for the leadership enhancement, the defendant must have been the "organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2. "In general, 'a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.'" *United States v. Caro-Silva*, 815 F. App'x 836, 842 (6th Cir. 2020) (quoting *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000)); *see also United States v. Bertram*, 900 F.3d 743, 753 (6th Cir. 2018).

The government, at sentencing, produced as evidence that Burgess was exerting control over Dexter a collection of messages exchanged between the two. In the messages, Dexter requested that he receive fifty percent of profits from clients that came from him, and Burgess replied that, unless Dexter was going to buy half of their product, Dexter should not try to shake Burgess down. R. 155-1 (Message Exchange at 4) (Page ID #833). The government also provided a drug ledger which shows that Burgess was supplying at least five other individuals and that he was setting the prices for those individuals to pay and which includes the statement "I'm sole supply for all crews within 2 months." R. 155-2 (Drug Ledger) (Page ID #836). At the sentencing hearing, this was the only evidence that the government offered to show that Burgess was exercising control over one of the other participants in the conspiracy. R. 169 (Sent'g Hr'g Tr. at 24) (Page ID #967).

-12-

Evidence of buying and selling drugs is insufficient to show that a defendant is a leader or exercised control over another participant. *See United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994) ("[M]ere buying and selling, without other evidence, is not sufficient to show that a defendant is a leader, organizer, manager, or supervisor."); *U.S. v. Garcia*, 19 F.3d 1123, 1125 (6th Cir. 1994) (holding that there was insufficient evidence that the defendant, who was a distributor of drugs, was a leader or organizer because there was insufficient evidence to connect him to the lower tier of drug sellers); *see also United States v. Kamper*, 748 F.3d 728, 748 (6th Cir. 2014) ("To qualify for this enhancement, a defendant must have managed or supervised 'one or more other participants,' and not merely the criminal scheme."). In support of its position, the government argued that in *United States v. Caro-Silva*, a panel of the Sixth Circuit concluded that a defendant was a leader when he "decided to whom drugs should be sold and the method of payment, collected money, sold drugs himself, and obtained drugs for others to sell." 815 F. App'x at 842. But the defendant in *Caro-Silva* decided to whom *the other participants* should sell drugs and determined the method of payment that the others were to use. The panel in *Caro-Silva* used the following as an example of the behavior that made the defendant a leader: he "instructed a co-conspirator . . . to whom he was to sell, and when and where he was to meet the drug purchaser" and, when told that a co-conspirator's customer was "anxious to receive his cocaine," "responded that the customer would have to wait until [the defendant] was ready." *Id.* This is much more clear-cut evidence that the defendant exercised control over the other participants than what was presented to the district court in this case. In another case holding that a defendant had exercised control over others, there was evidence that the defendant had "figuratively looked [another individual] in the eye and said, you know what you have to do." *United States v. Moncivais*, 492 F.3d 652, 660 (2007). Other situations in which defendants were determined to have supervised

or exercised control over others include when a defendant directed a participant to obtain a money order to bribe someone and, when asked by the participant if he could leave the conspiracy, refused to allow the participant to do so. *United States v. Caseslorente*, 220 F.3d 727, 736 (6th Cir. 2000).

The district court assessed the factors under U.S.S.G. § 3B1.1 cmt. 4, finding that Joseph's involvement was extensive, he had significant decision-making authority, and took the largest share of the profits. As to control over other participants, the district court found only that it didn't

> think there's any doubt of the nature and scope of the illegal activity and the degree of control and authority exercised—it's true there might be—obviously Mr. Johnson probably exercised more control or authority, but within these at least five people in this group, [Burgess] certainly was the leader or organizer as it relates to his distribution of drugs . . . certainly in his supply to Mr. Dexter and others . . . .

R. 169 (Sent'g Hr'g Tr. at 26–27 (Page ID #969–70). But the leadership enhancement can be applied only when the defendant "has 'exerted control over at least one individual within a criminal organization,'" and "not where the defendant has 'merely exercised control over the property, assets or activities of the enterprise.'" *Sexton*, 894 F.3d at 795 (quoting *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004)). Thus, the district court was required to find that Burgess exercised control over another participant, and not just the activities of the criminal enterprise. Because I believe that the district court clearly erred when it applied the leadership enhancement without such a finding, I respectfully dissent from the majority's affirmance of Burgess's sentence.