RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DERRICK KELLEN MITCHELL,

*Defendant-Appellant*.

No. 23-5761

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:20-cr-00087-2—Katherine A. Crytzer, District Judge.

Decided and Filed:  April 28, 2025

Before:  SUTTON, Chief Judge; SILER and WHITE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

SUTTON, Chief Judge.  Derrick Mitchell pleaded guilty to drug-trafficking and money-laundering charges after reaching a plea agreement with prosecutors.  Through the agreement, Mitchell waived his right to appeal unless the district court imposed an above-Guidelines sentence.  The court imposed a below-Guidelines sentence.  Mitchell seeks to appeal anyway.  Because he may not do so under his voluntarily accepted plea agreement, we dismiss the appeal.

I.

In July 2019, federal law enforcement investigated crystal-methamphetamine trafficking in rural eastern Tennessee.  That led them to suppliers in nearby Knoxville, including Mitchell. When authorities executed a search warrant at Mitchell's home in October 2020, they found drugs, five firearms, several rounds of ammunition, and approximately $2,000 in cash.  Mitchell pleaded guilty to conspiring to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h).  He agreed to waive his right to appeal unless the district court imposed an above-Guidelines sentence.  The district court accepted Mitchell's plea.

The probation office recommended that the district court apply two enhancements:  one for money laundering and another for possessing a firearm in connection with a drug-trafficking offense.  The latter enhancement came as a surprise to Mitchell.  In his plea agreement, the parties "agree[d] and stipulate[d] that, apart from a two-level increase for money laundering," "no other upward enhancements . . . apply in this case."  R.397 at 3 ¶ 4.  The parties reached this agreement under Criminal Rule 11(c)(1)(B), which makes such stipulations mere recommendations to the court.  By contrast, plea-agreement stipulations under the process laid out in Criminal Rule 11(c)(1)(C) bind the court.

At sentencing, Mitchell initially did not object to the relevant parts of the presentence report, and the district court adopted it in full.  Later on, Mitchell's counsel raised the matter of the firearm enhancement, which he suggested might be inconsistent with the plea agreement. The court explained that the stipulation in the parties' plea agreement was "not binding on the [c]ourt," and that the court had already "adopted" the probation office's report, including its firearm-enhancement recommendation.  R.590 at 14–15.  Mitchell's counsel acknowledged that he had no "good-faith" objection to the facts underlying the enhancement but reiterated that "it was [his] understanding" that the plea agreement "becomes binding on the [c]ourt" once accepted.  R.590 at 15.  The court again explained that the recommendations in the parties' plea agreement did not bind the court.  With no further objection from Mitchell's counsel, the court sentenced Mitchell to 233 months, which falls below the Guidelines range of 292 to 365 months. Mitchell appeals.

II.

The government moves to dismiss the appeal under the appeal waiver in his plea agreement. In the agreement, recall, Mitchell waived his ability to appeal unless the district court imposed an above-Guidelines sentence. Because the court entered a below-Guidelines sentence, we agree with the government that Mitchell's appeal must be dismissed.

Mitchell pushes back on this conclusion in two ways. He argues that he did not validly plead guilty in the first place and that the government failed to live up to its end of the bargain. Each argument deserves a turn.

A.

*Validity of the plea*. Mitchell contends that the district court failed to adequately inform him of the consequences of his guilty plea, voiding the plea deal and, with it, the appeal waiver. A district court may accept a guilty plea only if the defendant knowingly, intelligently, and voluntarily waives his right to a trial, and has "sufficient awareness of the relevant circumstances and likely consequences" of the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). Criminal Rule 11 implements the process, and its litany of questions and answers is designed to satisfy these imperatives. *See United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013).

Because Mitchell argues that his guilty plea was invalid for the first time on appeal, the stringencies of plain-error review apply. *See United States v. Presley*, 18 F.4th 899, 903 (6th Cir. 2021). Mitchell thus must show (1) an error, (2) that is "obvious or clear," (3) that "affected [his] substantial rights," and (4) that "affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quotation omitted).

The district court did not plainly err when it accepted Mitchell's plea. The district court carefully adhered to Rule 11's requirements. And the transcript reveals that Mitchell understood the nature of his plea. The district court asked Mitchell, among other things, whether he had "fully discussed" the case with his lawyer (he had), R.589 at 4, whether his lawyer had explained to him "the terms of the plea agreement" (he had), R.589 at 6, whether he knew that he had a

right to plead not guilty and proceed to trial (he did), and whether he realized that the plea agreement waived his right to appeal unless he received an above-Guidelines sentence (he did). The court then reviewed in detail the plea agreement's stipulations, including that "the government agrees to recommend . . . that for sentencing purposes, apart from a two-level increase for money laundering[,] . . . no other upward enhancements, adjustments, departures, or variances apply." R.589 at 11–12. As Rule 11 requires, the court "advise[d]" Mitchell that these stipulations "are only recommendations and . . . do not bind the [c]ourt" and that he "would not have the right to withdraw [his] plea" even "if the [c]ourt [chose] not [to] follow these recommendations." R.589 at 12. It then asked Mitchell how he wished to plead, and he said that he wished to plead guilty to both counts. It verified again that he had spoken with his lawyer about "the possible application" of the Guidelines to his case (he had), R.589 at 20, and that he understood that the court was required to "calculate the applicable sentencing guideline range[] and consider that range" when deciding upon an appropriate sentence (he did), R.589 at 19. The court finally accepted the plea and concluded that Mitchell "ha[d] offered to plead guilty knowingly and voluntarily." R.589 at 21. In view of all that the district court had explained to Mitchell and in view of Mitchell's understanding and agreement to each point, that was not obviously mistaken.

Mitchell complains that he did not *really* understand that the plea agreement's stipulations were only recommendations. But the district court informed him of precisely that fact before he decided to plead guilty. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Brady*, 397 U.S. at 755, 757 (quotation omitted); *see also United States v. Ellis*, 115 F.4th 497, 501 (6th Cir. 2024). Courts are rightly skeptical of "post hoc assertions from a defendant" about what he *really* thought but did not say at the time of a plea. *Lee v. United States*, 582 U.S. 357, 369 (2017). At the very least we cannot say that it should have been obvious to the court that Mitchell failed to grasp what it just told him.

True, as Mitchell argues, the district court never specifically asked him whether he understood the provision. But it was under no obligation to do so. It explained to him in plain

terms the effect of the plea agreement if he decided to plead guilty: that it waived certain rights, that its stipulations were "only recommendations," and that he "would not have the right to withdraw [his] plea" even "if the [c]ourt [chose] not [to] follow these recommendations." R.589 at 12. That was all Rule 11 required. Fed. R. Crim. P. 11(c)(3)(B) (requiring the district court to "advise the defendant" that he may not "withdraw [his] plea," even "if the court does not follow the recommendation[s]" outlined in his agreement with the government). A district court is not required "to inquire specifically" as to whether a defendant understands a provision that is "adequately explained" to him. *United States v. Sharp*, 442 F.3d 946, 951 (6th Cir. 2006).

Shouldn't it make a difference, Mitchell counters, that his own lawyer expressed confusion about whether the court was bound by the stipulation? But that doesn't change matters either. For one thing, it isn't clear that Mitchell's lawyer was confused *at the time of the plea*. He sat through the hearing and didn't speak up when the district court explained to Mitchell that the agreement's stipulations were in fact "only recommendations." R.589 at 12. That he said something else eight months later, at the time of Mitchell's sentencing, does not show otherwise. *See Lee*, 582 U.S. at 369. For another, the relevant question isn't whether Mitchell's lawyer misunderstood the details of the plea agreement; it is whether the district court told Mitchell about "the relevant circumstances and likely consequences" of his plea. *Brady*, 397 U.S. at 748. The court did.

Mitchell maintains in the alternative that the government tricked him. He alleges that it "knew" at the time of the plea negotiations that the firearm enhancement would apply and thus "intentionally or negligently misled him" into thinking otherwise. Appellant's Br. 17. But he offers no proof for this assertion. "[I]n the absence of clear evidence to the contrary, courts presume that" prosecutors, like other public officials, "have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation omitted). While it is true that the government knew that firearms were found in Mitchell's home, it did not know (and could not have known) whether Mitchell would concede he owned the firearms and that they were linked to the offense—two essential elements of the enhancement. *See, e.g.*, *United States v. Kennedy*, 65 F.4th 314, 318–20 (6th Cir. 2023). That Mitchell entered into a bargain he now regrets does not mean that the government conned him into it. *See United States v. Cook*, 607 F.

App'x 497, 505–08 (6th Cir. 2015); *see also United States v. Ruiz*, 536 U.S. 622, 630 (2002). No plain error occurred.

## B.

*The government's performance.* Even when a defendant legitimately accepts an appellate waiver in connection with a plea agreement, we may enforce it only when the government lives up to its end of the bargain. *United States v. Swanberg*, 370 F.3d 622, 626–27 (6th Cir. 2004). Mitchell claims that the government broke a promise: that only one enhancement (for money laundering) would be used to calculate his Guidelines range. Because he did not object to the government's actions below, we again review the argument only for plain error.

The problem for Mitchell is that the government never promised him that only one enhancement would apply. A reasonable person would understand—just as the court told Mitchell in his plea colloquy—that any stipulation in the plea agreement was merely a recommendation to the district court. Any ambiguity in what it means for "the parties [to] agree and stipulate" that "no other upward enhancements . . . apply" is clarified by the clause specifying that the stipulation is made "pursuant to Fed. R. Crim. P. 11(c)(1)(B)," R.397 at 3 ¶ 4, a rule that exclusively provides for agreements between the parties that do not bind the court. And the next page of the plea agreement states that the government has made "[n]o promises . . . to the defendant as to what the sentence will be in this case." R.397 at 4 ¶ 5. The district court did not plainly err in failing to hold the government to a promise it never made.

Even so, Mitchell contends, the government did not object when the probation office recommended the additional enhancement. But neither did he. He objected only after the district court adopted the presentence report—with its two enhancements. When he belatedly objected, the government was careful to tell the district court that its agreement with Mitchell was "a contract" that "the United States is not going to breach." R.590 at 13–14. True, the government noted that the "plea agreement is not binding on the [c]ourt," R.590 at 14, but that was simply repeating what the court had already said to Mitchell at the time of his plea. At bottom, the government promised Mitchell that it would neither seek nor support any

additional enhancements.  The government did not break its promise—and certainly not plainly so.

Even if we assumed that the government was required to make the pro-forma effort of joining in Mitchell's objection, his claim still would fail.  To qualify as a plain error, recall, an error must not only be "obvious" but also have "affected the outcome" of the proceeding—here, by changing the length of Mitchell's sentence.  *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation omitted).  If the government had done as Mitchell now asks and opposed the probation office's recommendation to apply the firearm enhancement, there is no reason to believe its opposition would have made any difference.  As Mitchell's counsel conceded at sentencing, he had no "good-faith basis" for objecting to the enhancement, R.590 at 16, and even now Mitchell does not appear to dispute that the enhancement plainly covers the undisputed facts recounted in the presentence report.  Because Mitchell has not shown that the government's (supposed) breach "swayed" the district court, *United States v. Keller*, 665 F.3d 711, 715 (6th Cir. 2011), his plain-error claim necessarily fails.

We dismiss the appeal in accordance with the plea agreement's appellate waiver provision.