NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0421n.06

Case Nos. 24-3308/3309/3364/3389/3400/3438

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 11, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| RONNIE RADOVIC (24-3308), COREY WRIGHT (24-3309), ALGYN KERNEY (24-3364), IDRIS JACKSON (24-3389), ALFRED SANDERS (24-3400), NASSER KAHOOK (24-3438), | ) ) ) ) ) ) ) | OPINION |
| Defendants-Appellants. | ) ) | |

Before: BATCHELDER, CLAY, and BLOOMEKATZ, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** These six consolidated appeals involve a large-scale methamphetamine and fentanyl manufacturing and distribution conspiracy in Akron, Ohio, comprising fifteen defendants. Ronnie Radovic, Corey Wright, Algyn Kerney, Idris Jackson, Alfred Sanders, and Nasser Kahook were indicted in a single 49-count indictment, and separately pleaded guilty. The district court subsequently sentenced each defendant. The defendants now bring this appeal, each raising separate challenges to his imposed sentence. We affirm. We address the appeals separately.

### I.     Ronnie Radovic (No. 24-3308)

During this conspiracy, Ronnie Radovic obtained cocaine from Sanders for the purposes of distribution. A federal grand jury indicted Radovic on two counts: (1) conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 84l(a)(l),

(b)(l)(A), (b)(l)(B), and (b)(l)(C)) (Count 1), and (2) use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b) (Count 45). Radovic agreed to plead guilty to Count 1.

As part of Radovic's plea agreement, the parties stipulated that his total offense level under U.S.S.G. § 2D1.1(c)(12) was 16, with an anticipated three-level reduction for acceptance of responsibility. It did not, however, calculate his criminal history score or recommend a specific sentence beyond the stipulated Guidelines offense level. At his plea hearing, Radovic confirmed that he understood that the recommended Guidelines-range sentence in the plea agreement did not bind the district court. After this, the district court gave notice of a possible upward variance based on Radovic's prior history of violence.

At sentencing, the district court determined that Radovic's final offense level was 13, which included a three-level reduction for acceptance of responsibility, and assigned a Criminal History Category of V, resulting in a Guidelines range of 30 to 37 months. After considering the 18 U.S.C. § 3553(a) factors, the district court concluded that the recommended Guidelines range was insufficient to deter Radovic from committing future crimes and to protect the public, given his extensive criminal history and the seriousness of the offense. Accordingly, the district court varied upward—citing Radovic's propensity for violence, his participation in the conspiracy while on state-supervised release, his history of recidivism, and the nature of the offense—and sentenced Radovic to 57 months' imprisonment followed by eight years of supervised release. The district court recognized that this four-level upward variance was "substantial" but "necessary on this record and history" because many of his previous criminal acts were not accounted for in the recommended sentence. Radovic did not object to the upward variance at sentencing. Radovic now appeals, challenging the substantive reasonableness of his above-Guidelines sentence.

A criminal sentence must be substantively reasonable, which requires that the sentence be proportionate to the seriousness of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a). *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019); *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008). A district court imposes a substantively unreasonable sentence if the sentence is chosen arbitrarily or based on impermissible factors, or if the district court fails to consider or gives unreasonable weight to any pertinent § 3553(a) factors. *United States v. Kirchhof*, 505 F.3d 409, 413 (6th Cir. 2017). This does not preclude a district court from giving some factors more weight than others, as not all the factors "are important in every sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). We do not require the district court's rote recitation of the § 3553(a) factors but require only that the court provide an explanation of why it chose the imposed sentence. *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007). And, as this court has repeatedly stated, "it is not our job to second-guess the district court's reasonable balancing of the factors." *United States v. Martin*, 751 F. App'x 873, 875 (6th Cir. 2018) (citing *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008)).

We review substantive reasonableness under an abuse-of-discretion standard. *United States v. Axline*, 93 F.4th 1002, 1007 (6th Cir. 2024). Under this standard, we will not disturb the sentence imposed by the district court unless it was "based on an error of law or a clearly erroneous finding of fact," or we are "left with the definite and firm conviction that the district court committed a clear error of judgment." *Id.* We presume that a within-Guidelines sentence is reasonable, but we do not assume that sentences outside of the Guidelines range are unreasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). However, if the district court imposes an above-Guidelines

sentence, it must offer a "sufficiently compelling" justification for the variance. *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *Gall*, 552 U.S. at 50).

We start our substantive reasonableness inquiry with the applicable Guidelines range, which both parties agree was properly calculated at 30 to 37 months. *See United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008). However, because the district court varied upward four levels, Radovic's above-Guidelines sentence does not carry the usual presumption of reasonableness. *See Gall*, 552 U.S. at 51. And because Radovic's sentence was outside of the Guidelines range, the variance must be supported by compelling evidence. *Perez-Rodriguez*, 960 F.3d at 754. Even so, Radovic "must [still] surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance." *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019).

Radovic does not surmount this high bar. The district court adequately discussed the § 3553(a) factors and explained its decision to vary upward, which rested primarily on the need for specific and general deterrence. *See* 18 U.S.C. § 3553(a)(1), (2)(B). While the district court placed emphasis on Radovic's criminal history as a reason for varying upward, it did not abuse its discretion in doing so. *United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023); ("[T]he district court could consider [the defendant's] prior criminal history when sentencing him, even if the criminal history was already factored into his sentencing range under the Guidelines."); *United States v. Sanbria-Bueno*, 549 F. App'x 434, 441 (6th Cir. 2013) ("It is eminently reasonable to weigh a defendant's criminal history and the efficacy of prior sentences when selecting the appropriate sentence, regardless of whether it is within or above the Guidelines range."). Here, the district court did not merely rely on the existence of prior convictions in varying upward but considered the violent and persistent nature of Radovic's prior offenses, the efficacy of previous sentences in deterring criminal conduct, and the need to protect the public. It further explained

that the upward variance was based in part on Radovic's joining this conspiracy while on state-supervised release, demonstrating his inability to comply with legal obligations.

Further, the district court considered that some of Radovic's past criminal conduct was not accounted for in his criminal history score. This meant that Radovic's recommended Guidelines range did not fully reflect his propensity for violence and likelihood of recidivism, which placed this conviction outside the "heartland" of cases to which the Guidelines were intended to apply. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). But even if the district court "double count[ed]" Radovic's criminal history, as he contends, this is not prohibited by our Court's precedent and is indeed appropriate in certain cases. *United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020). The district court carefully outlined Radovic's criminal history, which included violent and drug-related offenses and cited a "specific need for deterrence beyond that already captured by the Guidelines." *Id.* Because this was not a mine-run case for which the Guidelines are most suited, the district court's determination "attract[s] greatest respect." *United States v. Boucher*, 937 F.3d 702, 709 (6th Cir. 2019).

Finally, Radovic argues that the district court's upward variance is substantively unreasonable because his history of criminal violence is not meaningfully related to this drug conspiracy conviction. This argument fails because, as stated above, the district court found that Radovic had a "uniquely problematic criminal history" that required a specific need for deterrence beyond the Guidelines. *See Lee*, 974 F.3d at 677. And even if Radovic did not have a unique criminal history requiring more specific deterrence, his criminal history shares "some meaningful relationship" with the instant offense. *Id.* at 681. Indeed, Radovic has had four previous drug convictions, three of which were trafficking convictions. Considering these standards, we find no abuse of discretion.

**II.     Corey Wright (No. 24-3309)**

During this conspiracy, Corey Wright obtained cocaine and fentanyl from Sanders for the purposes of distribution.  A federal grand jury indicted Wright on two counts: (1) conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 84l(a)(l), (b)(l)(A), (b)(l)(B), and (b)(l)(C)) (Count 1), and (2) use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b) (Count 46).  Wright agreed to plead guilty to Count 1.

As part of his plea agreement, the parties agreed that Wright's total offense level under U.S.S.G. § 2D1.1(c) was 18, with an anticipated three-level reduction for acceptance of responsibility.  However, they did not agree on his criminal history score or a recommended sentence beyond the stipulated Guidelines offense level.  The plea agreement did not allow either party to seek a departure or variance, but it allowed Wright to seek a two-level minor-participant reduction under U.S.S.G § 3B1.2(b).  Before sentencing, the district court notified Wright of a possible upward variance based on the nature and circumstances of the offense, Wright's criminal history, and his other characteristics.

At sentencing, Wright sought the two-point reduction, which the government opposed.  The district court denied the motion, finding that Wright was not a minor participant. The district court then determined that Wright's final offense level was 15, which included a three-level reduction for acceptance of responsibility, and assigned a Criminal History Category of IV, resulting in a Guidelines range of 30 to 37 months.  Neither party objected to this calculation.

After considering the § 3553(a) factors, the district court sentenced Wright to 57 months' imprisonment.  The district court determined that an upward variance was necessary to deter Wright from engaging in future criminal conduct and to protect the community.  The district court

was specifically concerned with Wright's criminal history, which began at just 17 years old when he shot and killed someone, and the district court noted that there was no period in Wright's life when "he was doing positive things". Wright objected to the upward variance.

On appeal, Wright argues that the district court committed two procedural errors: (1) it failed to provide him with proper notice that it was considering an upward variance, and (2) even though the plea agreement's stipulated sentence was not binding on the court, the district court's failure to honor that stipulation negated the plea agreement. Wright also challenges the substantive reasonableness of his sentence.

A criminal sentence must be both procedurally and substantively reasonable. *Parrish*, 915 F.3d at 1047. Procedural-reasonableness review requires consideration of the factors and procedures used by the district court to reach the chosen sentence, including whether that court correctly calculated the applicable Guidelines range. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). Substantive reasonableness requires that the sentence be proportionate to the seriousness of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a). *Vowell*, 516 F.3d at 512.

Wright first argues that the district court procedurally erred because it did not provide adequate notice of a potential upward variance. Because Wright did not object to the adequacy of the notice at his sentencing hearing, we review this argument for plain error. *United States v. Simpson*, 138 F.4th 438, 445 (6th Cir. 2025). A finding of plain error requires that the record show "(1) an error, (2) that was obvious or clear, (3) that affected substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

Wright contends that the district court did not articulate the specific facts on which it was relying in considering the variance. But this argument fails as our case law does not require that

the district court provide notice of a potential upward variances. *United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015). Wright correctly notes that it would be a procedural error for a district court to vary upward based on facts that "came as a surprise" to the defendant and thus deprived the defendant of a chance to respond. *Id.* at 804. However, this is not what happened here. The district court relied on material in Wright's Presentence Investigation Report ("PSR")— which Wright acknowledged he had reviewed with counsel—to support the upward variance. *See United States v. Hinton*, No. 21-3166, 2021 WL 5505498, at *4 (6th Cir. Nov. 24, 2021) (holding that the defendant could not claim that the facts on which the district court based its upward variance came as a surprise because the facts that the district court based its determination on were outlined in the defendant's PSR). And, at the sentencing hearing, Wright had ample opportunity— and indeed took that opportunity—to explain why an upward variance was not necessary. Because there were no "relevant issues that [Wright] did not anticipate or have the opportunity to address," there was no surprise, and thus, his reasonable notice argument fails. *See United States v. Rossi*, 422 F. App'x 425, 433 (6th Cir. 2011).

Wright's second procedural-reasonableness challenge fails because the district court was not bound by the recommended Guidelines range in the plea agreement. *See United States v. Robbins*, 240 F. App'x 684, 692 (6th Cir. 2007). And because of this, varying outside of the recommended Guidelines range does not "eviscerate" the plea agreement, as Wright contends. More importantly, Wright confirmed several times during his plea colloquy that he understood that the district court was not bound by the sentencing stipulation in the plea agreement and that he might receive a higher sentence. We conclude that the district court committed no procedural error.

Nor do we find any merit in Wright's substantive reasonableness challenge. First, Wright contends that the district court gave undue weight to his criminal history in justifying the upward

variance. The district court did not abuse its discretion in placing more emphasis on Wright's criminal history than other factors; the district court was not required to weigh all factors equally. *United States v. Gates*, 48 F.4th 463, 478 (6th Cir. 2022). The district court did not rely on the existence of the prior convictions in varying upward but considered the violent and persistent nature of prior offenses, the inefficacy of the previous sentences in deterring Wright's criminal conduct, and the need to protect the public. Specifically, the district court noted that the "substantial" upward variance was necessary because Wright's previous periods of incarceration did not deter him from engaging in future criminal conduct.

Second, Wright argues that the district court committed substantive error by failing to honor its alleged implicit promise that, if he "stayed out of trouble" between the plea hearing and sentencing, he would receive a lower sentence. But this argument misconstrues the district court's statements during the plea colloquy. The district court did not promise—implicitly or otherwise— that Wright would get a lower sentence if he stayed out of trouble; it simply reminded Wright that if he were to get into trouble, his sentence would "most assuredly" be above the Guidelines. The district court said nothing about Wright's receiving a lesser sentence if he stayed out of trouble. At most, this statement was a cautionary warning, not a binding promise. *See Robbins*, 240 F. App'x at 692 ("[T]he district court's statement during the plea hearing that it typically imposes the recommended sentence did not purport, in any way, to curtail the district court's discretion or imply that the district court viewed that statement as a binding promise."). Like Radovic, Wright does not "surmount [the] high bar to succeed on a substantive-reasonableness challenge even to an upward variance." *Thomas*, 933 F.3d at 613.

### III.   Algyn Kerney (No. 24-3364)

On May 25, 2023, police officers executed a search warrant at Algyn Kerney's residence. During the search, officers found numerous types of drugs—including fake Percocet pills that contained fentanyl—and several firearms.  Kerney was then arrested, and a federal grand jury indicted him on charges of (1) conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(l), (b)(l)(A), (b)(l)(B), and (b)(l)(C)) (Count 1); (2) possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 9-17); (3) felon in possession of a firearm in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(8) (Counts 18-19); (4) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C § 924(c)(1)(A)(i) (Count 20); and (5) use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b) (Count 35).

Kerney pleaded guilty to Counts 1, 9 through 17, and 18 through 20.  The plea agreement calculated Kerney's total offense level to be 32, which included a two-point increase for a drug-maintained premises, but there was no agreement as to his Criminal History Category.  Kerney's PSR recommended that the district court also apply a four-level enhancement under §2D1.1(b)(13) for knowingly misrepresenting or marketing "as another substance a mixture or substance containing fentanyl."

At sentencing, Kerney acknowledged that he had reviewed the PSR, and he objected to the four-level enhancement under U.S.S.G. § 2D1.1(b)(13) recommended by the PSR.  Kerney argued at sentencing that the PSR improperly relied upon a ten-second conversation he had with officers during the search to establish that he had the requisite mens rea to support application of the enhancement.  The district court rejected this argument after listening to the conversation at the

sentencing hearing where he heard Kerney clearly state in the audio that the pills were "fake percs." Kerney then pivoted and argued that there was no evidence that he actually sold these fake pills to buyers, despite his admitting that he possessed the pills to sell them. The district court overruled Kerney's objection and applied the four-level enhancement, finding that Kerney's conversation with the police during the search indicated that he did indeed "market or represent" the fentanyl pills as legitimate Percocet pills. Kerney again objected to the application of this enhancement.

After considering the § 3553(a) sentencing factors, the district court sentenced Kerney to 151 months incarceration, with a mandatory consecutive 60-month sentence for possessing a firearm in furtherance of a drug conspiracy, for a total of 211 months. The district court determined that this sentence was necessary given Kerney's extensive criminal history, the lack of deterrence achieved by his previous sentences, and the dangerous nature of the instant offense. On appeal, Kerney disputes the procedural reasonableness of his sentence, maintaining that the record does not support the district court's application of a four-level enhancement under U.S.S.G. § 2D1.1(b)(13).

Procedural reasonableness encompasses whether the district court properly applied a sentencing enhancement. *United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023). When considering a challenge to the application of a sentencing enhancement, we review the district court's findings of fact for clear error and review its legal conclusions de novo. *United States v. Terry*, 83 F.4th 1039, 1040-41 (6th Cir. 2023). "Under the clear-error standard, we abide by the court's findings of fact unless the record leaves us with the definite and firm conviction that a mistake has been committed." *United States v. House*, 872 F.3d 748, 751 (6th Cir. 2017). Further, the government must show by a preponderance of the evidence that the facts support the

application of the enhancement. *United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005); *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012).

Kerney argues that the district court erred in applying the four-level enhancement under U.S.S.G. § 2D1.1(b)(13) because the facts did not show that he marketed or represented the fake Percocet pills to buyers as real Percocet pills. But Kerney's argument falls short. The district court properly found by a preponderance of the evidence that Kerney knew that the substances found in the search contained fentanyl, that the substances were made to look like Percocet pills, and that Kerney was selling the pills. Indeed, Kerney admitted to officers that he knew the pills contained fentanyl and that he would "cut" the fentanyl with powdered sugar to achieve the desired color. He even referred to the pills as "fake percs" and officers observed that the pills were stamped with an "M-30" (legitimately manufactured Percocet pills are marked with an M-30). Finally, at his sentencing hearing, Kerney admitted that he was selling the pills.

Even though there was no direct evidence presented that Kerney sold these specific pills to buyers, it was entirely reasonable for the district court to conclude, based on a preponderance of the evidence, that Kerney represented or marketed these pills as legitimate despite their containing fentanyl. *See United States v. Allen*, No. 21-3900, 2022 WL 7980905, at *3 (6th Cir. Oct. 14, 2022) (relying on circumstantial evidence to conclude that the defendant had the requisite mens rea to apply the § 2D1.1(b)(13) sentencing enhancement). And even if we were to come to a conclusion different from the district court's, we cannot reverse if there are "two permissible views of the evidence," and the district court drew a permissible conclusion given the evidence presented and Kerney's own admissions. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). The district court did not err in applying the § 2D1.1(b)(13) sentencing enhancement.

## IV.     Idris Jackson (No. 24-3389)

During this conspiracy, Idris Jackson obtained cocaine and fentanyl from Sanders for the purposes of distribution.  A federal grand jury indicted Jackson with conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C)) (Count 1), and use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b) (Count 40).  Jackson pleaded guilty to Count 1.  As part of his plea agreement, the parties stipulated that Jackson's total offense level under U.S.S.G § 2D.1.1(c) was 24, with anticipated reductions of three levels for acceptance of responsibility and two levels under the safety valve provision.  There was no agreement as to his Criminal History Category or to recommend a sentence beyond the stipulated Guidelines offense level.

At sentencing, the district court determined that Jackson's final offense level was 19, which included the three-level acceptance-of-responsibility reduction and the two-level safety-valve reduction and assigned a Criminal History Category of IV.  This resulted in a Guidelines range of 37 to 46 months.  Neither party objected to this calculation, and the government requested a 46-month sentence, noting that Jackson had a long history of driving under the influence, which made him a danger to the community.

The district court considered the § 3553(a) sentencing factors, specifically emphasizing the serious nature and circumstances of the offense, Jackson's troubling criminal history of driving under the influence, and Jackson's persistent failure to pay child support.  The district court recognized that the average sentence length for similar defendants was 29 to 30 months but determined that this was not a typical case given Jackson's proclivity for ignoring the law.  So, the district court varied upward one-level and sentenced Jackson to 51 months' imprisonment.

The district court justified the upward variance by finding that Jackson posed "an extreme danger for the community" given his extensive criminal history of driving under the influence and the serious nature of dealing fentanyl. Jackson objected to the five-month upward variance. Jackson now appeals, challenging the procedural and substantive reasonableness of his sentence.

Jackson first argues that his sentence was procedurally unreasonable because the district court did not give notice of a potential upward variance. However, Jackson "fails to meaningfully develop this argument and does not substantiate this claim by pointing to specific parts of the record or plea colloquy." *United States v. Hensel*, 220 F. App'x 428, 431 (6th Cir. 2007). Jackson, therefore, waived this issue on appeal. *Doe v. Michigan State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021). But even if he did not waive this issue, his argument still fails because district courts are not required to give prior notice of an upward variance, and the facts that the district court based this upward variance on did not come as a surprise to Jackson. *Coppenger*, 775 F.3d at 803-04.

Jackson's substantive-reasonableness challenge fares no better. He contends that the district court erred in varying outside the recommended-Guidelines range because his conviction was a mine-run drug conspiracy case. But this argument fails as the district court adequately explained that due to the "unique nature of his criminal history," the recommended-Guidelines range did not fully represent his likelihood of recidivism and his unique danger to the community, placing his drug conspiracy conviction outside the "heartland" to which the Guidelines were intended to apply. *See Kimbrough*, 552 U.S. at 109. The district court explained that Jackson had four DUI-related charges, which included a hit-and-run accident involving property in 2019 that occurred just two weeks after his being arrested for a previous DUI offense, a drug possession charge in 2022, three convictions for failure to pay child support, and a significant juvenile criminal history.

14

Jackson also contends that his sentence is substantively unreasonable because the district court impermissibly relied on his past DUI-related offenses to justify the upward variance. But as stated above, the district court found that Jackson had a "uniquely problematic criminal history" that required a specific need for deterrence beyond the Guidelines. *See Lee*, 974 F.3d at 677. And even if Jackson did not have a criminal history requiring more specific deterrence, his criminal history shares "some meaningful relationship" with the current offense because Jackson had a previous drug conviction in 2022. *Id.* at 681.

Because the district court reasonably found that this was not a mine-run case for which the Guidelines are most suited, the district court's determination "attract[s] greatest respect." *Boucher*, 937 F.3d at 709. Indeed, the district court provided a sufficient justification for its conclusion that an upward variance was necessary to protect the public and to deter future criminal conduct, even if this imposed sentence created a sentencing disparity. Therefore, the district court's decision passes muster even under a "closer review." *Perez-Rodriguez*, 960 F.3d at 754.

## V.  Alfred Sanders (No. 24-3400)

After several years of investigation, law enforcement discovered through surveillance and controlled buys that Alfred Sanders was distributing fentanyl, methamphetamine, cocaine, lysergic acid diethylamide ("LSD"), heroin, and oxycodone in the Akron, Ohio, area. From March 2023 to August 2023, law enforcement, acting upon a valid warrant, wiretapped Sanders's phone and discovered that Sanders obtained large quantities of drugs, which he supplied to customers and other distributors—including the co-defendants in this case. They further learned that Sanders communicated with the co-defendants about drug supply and quality, kept records of the drug proceeds owed to him, used his home as "the office" for the conspiracy, largely directed the actions of the fellow conspirators, and carried a gun to protect his drugs and drug proceeds.

A federal grand jury indicted Sanders on charges of (1) conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 84l(a)(l), (b)(l)(A), (b)(l)(B), and (b)(l)(C)) (Count 1); (2) possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C) (Counts 2-4, 6-7); (3) felon in possession of a firearm in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(8) (Count 5); (4) possession of a firearm in furtherance of a felony drug trafficking crime in violation of 18 U.S.C § 924(c)(1)(A)(i) (Count 8); and (5) use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b) (Counts 35-49).

Sanders pleaded guilty to Counts 1 through 8. In the plea agreement, the parties agreed that Sanders's statutory maximum for Count 1 was life imprisonment. They also agreed that a two-level enhancement for maintaining a drug premises under U.S.S.G. § 2D1.1(b)(12) applied, but the agreement did not contemplate the four-level leadership enhancement under U.S.S.G § 3B1.1. The plea agreement stated that Sanders's offense level, before the three-level reduction for acceptance of responsibility, was 32. It further provided that the sentencing stipulations were not binding on the district court, that Sanders waived the right to appeal except to the extent the sentence exceeded the statutory maximum or exceeded the maximum of the sentencing imprisonment range calculated according to the stipulations and computations in the plea agreement, and that Sanders could not withdraw his guilty plea if the court rejected the sentencing recommendations. At his change-of-plea hearing, Sanders confirmed that he understood that he could not withdraw his plea if dissatisfied with his sentence.

Sanders's PSR determined that his final offense level was 38, which included a two-level enhancement for maintaining drug-involved premises and a four-level enhancement for being a leader in the conspiracy, and assigned a Criminal History Category of IV. Based upon the offense

level and criminal history, the PSR recommended a Guidelines-range sentence of 235 to 293 months, with a mandatory 60-month sentence for the felon in possession charge to run consecutively to all other counts.

At sentencing, both the government and Sanders asked the district court not to apply the four-level leadership enhancement recommended by the PSR, as that was not contemplated in the plea agreement.  The district court, however, overruled these objections and applied the two-level enhancement for maintaining drug premises and the four-level enhancement for being a leader in the conspiracy.  The district court determined that Sanders's final offense level was 32, which included a three-level reduction for acceptance of responsibility and a three-level reduction for substantial assistance, and assigned a Criminal History Category of IV.  Under this calculation, the Guidelines recommended a sentence of 168 to 210 months and a consecutive mandatory 60-month sentence for Count 8.

The district court then considered the § 3553(a) sentencing factors, highlighting the dangerous nature and circumstances of Sanders's role in the drug conspiracy and his lengthy criminal history. The district court sentenced Sanders to 168 months' imprisonment for Counts 1 through 7, and a consecutive 60 months for Count 8.  Sanders now appeals, challenging the validity of his plea agreement and the procedural reasonableness of his sentence.

We first address the validity of Sanders's plea agreement.  A district court may accept a guilty plea only if the defendant knowingly, intelligently, and voluntarily waives his rights, and has "sufficient awareness of the relevant circumstances and likely consequences" of the plea agreement. *Brady v. United States*, 397 U.S. 742, 748 (1970).  Federal Rule of Criminal Procedure 11 requires that the district court ask a litany of questions to satisfy these imperatives.  *United States v. Mitchell*, 135 F.4th 507, 510 (6th Cir. 2025).

Sanders contends only that the district court inaccurately informed him of his ability to withdraw his guilty plea under Criminal Rule 11, which would render the plea agreement and the appellate waiver void. Because Sanders gave no indication in the district court that he wanted to withdraw his plea but raises this argument for the first time on appeal, we review this claim for plain error. Sanders thus must show "(1) an error, (2) that is obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citation modified).

Sanders cannot make this showing. First, Sanders misconstrues the district court's discussion about withdrawing his guilty plea: the district court did not—contrary to Sanders's claim— unequivocally state that he could not withdraw his guilty plea. Rather, the court simply told Sanders that he could not withdraw his guilty plea and start over if his sentence was different from what he expected. *Id.* Second, and even more to the point, Sanders confirmed that his attorney had gone over the terms of the plea agreement with him and that he understood the terms of the plea agreement, which included the drug-house enhancement he now claims was erroneously imposed. And Sanders provides no "fair and just reason" to support a request to withdraw his plea. We conclude that Sanders knowingly, intelligently, and voluntarily entered into his plea agreement and that the agreement is valid.

We now turn to Sanders's second challenge—that the district court erred in applying both the two-level drug-premises and the four-level leadership enhancements. Because Sanders's plea agreement was valid, the appellate waiver in the agreement forecloses his claim that the district court procedurally erred in imposing the two-level drug-house enhancement contemplated in the plea agreement. *See United States v. Smith*, 960 F.3d 883, 886 (6th Cir. 2020) (holding that the criminal defendant's waiver of appeal rights was knowing and voluntary because he indicated at a

18

plea hearing that he understood and agreed to the waiver). The four-level leadership enhancement, however, was not addressed in the plea agreement and was objected to in the district court; the agreement's appeal waiver therefore does not bar appellate review.

Procedural reasonableness encompasses whether the district court properly applied a sentencing enhancement. *Taylor*, 85 F.4th at 388. When considering a challenge to the application of a sentencing enhancement, we review the district court's factfinding for clear error and "accord due deference to the district court's determination" that the enhancement applies. *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019). "Under the clear-error standard, we abide by the court's findings of fact unless the record leaves us with the definite and firm conviction that a mistake has been committed." *House*, 872 F.3d at 751. The government must show by a preponderance of the evidence that the facts support the application of the enhancement. *Yagar*, 404 F.3d at 972; *Stubblefield*, 682 F.3d at 510.

The Sentencing Guidelines mandate a four-point offense-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). And to determine whether the defendant was an "organizer or leader," the Guidelines require district courts to consider numerous factors including, (1) "the exercise of decision-making authority, the nature of participation in the commission of the offense," (2) "the recruitment of accomplices," (3) "the claimed right to a larger share of the fruits of the crime," (4) "the degree of participation in planning or organizing the offense," (5) "the nature and scope of the illegal activity," (6) and "the degree of control and authority exercised over others." *Id.* § 3B1.1 cmt. 4.

Sanders argues that he was not a leader in the conspiracy because there was no evidence that he recruited others to join the conspiracy or that he shared in a larger portion of the proceeds.

19

This argument fails. First, while these are factors § 3B1.1 directs district courts to consider, the district court is not required to find each factor in order to apply the enhancement. *See United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012). And here, the evidence showed that Sanders (1) kept records of how much money the co-conspirators owed him, (2) routinely requested payments from the co-conspirators, (3) collected drug proceeds and resupplied the co-conspirators with drugs at his residence (which was known as "the office"), and (4) directed a co-conspirator to make crack cocaine on his behalf. Also, Sanders's co-conspirators referred to themselves as Sanders's "soldiers."

Based on this evidence, the district court did not err in applying the four-level leadership enhancement.

## VI.     Nasser Kahook (No. 24-3438)

Nasser Kahook obtained cocaine from Sanders and distributed it. A federal grand jury indicted Kahook on two counts: (1) conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 84l(a)(l), (b)(l)(A), (b)(l)(B), and (b)(l)(C)) (Count 1), and (2) use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b) (Count 44). Kahook pleaded guilty to Count 1. In the plea agreement, the parties agreed that Kahook's base offense level was 24 and that he was eligible for a three-point reduction for acceptance of responsibility.

Before sentencing, Kahook filed a sentencing memorandum, requesting a sentence at the low-end of the Guidelines range because he was involved only in the possession and distribution of one kilogram of cocaine, and he did not possess a firearm. The district court did not find this compelling and filed a notice of possible upward variance based on Kahook's "prior conduct while in custody for prior offenses and while under supervision following custodial sentences."

20

At sentencing, the district court determined that Kahook's final offense level was 21, and assigned a Criminal History Category of III, yielding an advisory Guidelines range of 46 to 57 months. The district court again noted that it was considering a potential upward variance because this was Kahook's third federal conviction, he still owed a substantial amount in restitution on a previous conviction, and because much of his past criminal conduct was not accounted for in his criminal history score. The government requested a sentence in the middle of the advisory range, in part because Kahook was 62 years old and he was the first to file a notice of intent to plead guilty.

The district court then considered the § 3553(a) sentencing factors and found Kahook's numerous federal and state convictions troubling. The district court noted that Kahook stopped paying restitution in a previous federal conviction, leaving an outstanding balance of more than $300,000. Because of these concerns, the district court determined that a 57-month sentence was not sufficient to punish and deter Kahook, and it varied upward three levels, which increased the Guidelines range to 63 to 78 months. The district court sentenced Kahook to 78 months' imprisonment, stating that the "substantial upward variance" is "necessary and needed on this record" because Kahook had been sentenced to two previous within-Guidelines sentences of 46 months and 51 months, and neither sentence appeared to have served deterrence purposes. The district court acknowledged that the sentence created a disparity compared to the sentences of others convicted of similar offenses; however, he distinguished Kahook as a the "rare defendant" with two prior federal convictions and numerous state convictions.

The district court then asked the parties whether it was authorized to order Kahook to pay restitution in this case based on Kahook's earlier restitution obligation from a previous conviction. The government filed a response after sentencing, maintaining that the court did not have authority

21

to impose restitution but noting that this was a separate question from whether the district court could require Kahook to repay the money through a special condition of supervised release. Kahook's response agreed with the government that the district court could not impose restitution in this case. The district court imposed a special condition of supervised release that requires Kahook to make monthly minimum payments of 10 percent of his gross monthly income towards the restitution order from the previous conviction for the duration of his supervised release term. Kahook now appeals, challenging both the substantive reasonableness of his sentence and the imposition of the special condition on his supervised release.

We turn first to Kahook's challenge to the substantive reasonableness of his sentence. Our inquiry begins with the applicable Guidelines range, which both parties agree was properly calculated at 46 to 57 months. *See Haj-Hamed*, 549 F.3d at 1025. However, because the district court varied upward four levels, Kahook's above-Guidelines sentence does not carry the usual presumption of reasonableness. *See Gall*, 552 U.S. at 51. And because Kahook's sentence was outside of the applicable-Guidelines range, the variance must be supported by compelling evidence. *Perez-Rodriguez*, 960 F.3d at 754. But Kahook "must [still] surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance." *Thomas*, 933 F.3d at 613.

Kahook does not surmount this high bar. The district court adequately discussed the § 3553(a) sentencing factors and explained that Kahook's extensive criminal history and inability to fulfill certain legal obligations require an above-Guideline sentence. In varying upward, the district court relied not only on the existence of Kahook's prior convictions but also on the fact that Kahook had twice received within-Guidelines sentences that failed to deter him from future criminal conduct—as evidenced by the present conviction and his numerous state convictions. Nor had Kahook paid

the restitution ordered as part of his sentence in his earlier money-laundering conviction, indicating a lack of remorse and inability to follow the law. Further, much of Kahook's previous criminal conduct was not accounted for in his criminal history score.

Because of this, Kahook's Guidelines range did not fully represent the likelihood that he would recidivate, placing his drug-conspiracy conviction outside the "heartland" to which the Guidelines were intended to apply. *See Kimbrough*, 552 U.S. at 109. The district court adequately explained why Kahook's case differed from a typical case and provided a "sufficiently compelling" justification for the upward variance and creation of a sentencing disparity. *Perez-Rodriguez*, 960 F.3d at 754 (quoting *Gall*, 552 U.S. at 50). And even if the district court "double count[ed]" Kahook's criminal history, this is not prohibited by our Court's precedent and is, in fact, appropriate in certain cases, such as this one. *See Lee*, 974 F.3d at 677.

We find no abuse of discretion by the district court. While a 21-month upward variance is steep, it not for us to reweigh these factors on appeal as that is "beyond the scope of proper appellate review for substantive unreasonableness." *United States v. Houston*, 529 F.3d 743, 756 (6th Cir. 2008).

Next, we consider Kahook's argument that the district court erred in imposing the special condition of supervised release requiring that he make payments on a restitution sentence from a previous conviction. We review for abuse of discretion a district court's imposition of a condition of supervised release. *United States v. Barcus*, 892 F.3d 228, 235 (6th Cir. 2018). And we review those conditions along "two dimensions"—one dimension is procedural, and the other is substantive. *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006). But because Kahook challenges only the substantive dimension, we address only that concern. *See Barcus*, 892 F.3d at 235. Under the substantive dimension, a district court may impose a special condition of

23

supervised release if it meets three requirements. First, the condition must be "reasonably related" to the sentencing factors outlined in 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D). 18 U.S.C. § 3583(d)(1). Second, the condition must "involve[s] no greater deprivation of liberty than is reasonably necessary for" the several sentencing purposes in 18 U.S.C. § 3553(a)(2)(B)-(D). *Id.* § 3583(d)(2). Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § 3583(d)(3). "A condition must satisfy all three requirements but it need not satisfy every single factor and purpose within the first two requirements." *Barcus*, 892 F.3d at 235.

Kahook's challenge focuses on the first requirement, arguing that the imposed condition is not "reasonably related" to the instant offense, as the previous restitution order was to pay $361,434.11 for money laundering, conspiracy, illegal gambling, and financial bribery convictions. We disagree. The governing statute, 18 U.S.C. § 3583(d)(1), does not require that the two offenses be of the same nature, only that the district court reasonably tie the special condition of supervised release to the factors outlined in 18 U.S.C. § 3553. And the district court did that here. It explained that this special condition was necessary for deterrence purposes and to protect the public, given Kahook's pattern of taking advantage of members of his community.

Kahook looks to *United States v. Church*, 731 F.3d 530 (6th Cir. 2013), for support for his position. But this argument fares no better as *Church* deals with paying restitution to a third party that pays some or all of a victim's expenses, not repaying a previous restitution order as a condition of supervised release. *Id.* at 536. Furthermore, in *United States v. May*, a district court ordered, as a special condition of supervised release, that the defendant pay on a previous balance he legally owed to the Ohio Attorney General. 568 F.3d 597, 608-09 (6th Cir. 2009). Our Court upheld this condition because it met the "twin goals" of probation: to protect the public and discourage

24

recidivism. *Id.* (citing *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)). The same is true in this case.

We also find support in other circuits, each holding that a district court may impose special conditions of supervised release like the one found here. They have held that, under § 3583(d), a district court may, as a special condition of supervised release, require payment arising from a previous restitution order, so long as the condition does not impose a new restitution obligation. *United States v. Gill*, 523 F.3d 107, 109 (2d Cir. 2008) (per curiam); *United States v. Love*, 431 F.3d 477, 482-83 (5th Cir. 2005); *United States v. Mitchell*, 429 F.3d 952, 961-63 (10th Cir. 2005).

The district court did not abuse its discretion in imposing this condition.

## VII.

For the foregoing reasons, we AFFIRM the judgments of the district court.